MICHAEL O'NEILL v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

FILED DECEMBER 3, 1902. No. 9,992.

Commissioner's opinion, Department No. 3.

Master and Servant: NEGLIGENCE: MACHINERY. An employer is not liable in damages for the consequences of mere error in judgment in furnishing structures, machinery and appliances for the use of his servants in the prosecution of his business, unless it is shown that such error is itself the result of negligent or willful ignorance or inattention.

ERROR from the district court for Sarpy county. Tried below before SCOTT, J. Rehearing of case reported in 62 Nebr., 358. *Former judgment vacated and judgment below affirmed.*

*Michael F. Harrington*, for plaintiff in error:

Stepping between moving cars to uncouple them, is not negligence as a matter of law; and the question of fact is for the jury. *Belair v. Chicago & N. W. R. Co.*, 43 Ia., 662.

Every railroad in this state is blocked—not a single exception. The Union Pacific, the Burlington, the Great Northern, the Milwaukee, the Lake Shore and all the great systems of roads are blocked, and have been for years. Blocking is a device which experienced railroad men well know lessens the danger to employees. Blocking is some expense and the shrewd managers of these great lines of transportation would not block the guard-rails and go to the expense of blocking them unless the blocking lessened the danger. The judgment of the Rock Island Company itself, by its conduct in blocking its rails in part before this injury, and in part after this faithful employee had

lost both his legs, is proof conclusive of the judgment of the Rock Island Company itself, that blocking lessens the danger.

*Evans, Woolworth* and *McHugh* (*Marcus A. Low,* of counsel), *contra.*

Railroads are not required to adopt every appliance which some roads, even a majority of the well-regulated, have incorporated into their system of management. Something must be accorded to diversity of judgment. If many well-regulated railroads abstain from adopting a particular appliance which other roads, even a majority, consider wise precautions and adopt, such abstention can not be pronounced, *per se,* recklessness or negligence. *Louisville & N. R. Co. v. Allen,* 78 Ala., 494; *Georgia P. R. Co. v. Propst,* 83 Ala., 518; *Wilson v. Louisville & N. R. Co.,* 85 Ala., 269; *Louisville & N. R. Co. v. Hall,* 87 Ala., 708, 719, 13 Am. St. Rep., 84; *Louisville & N. R. Co. v. Hall,*[*] 91 Ala., 112, 24 Am. St. Rep., 863, 870.

*Hon. William Vincent Allen,* also for defendants in error:

I desire to submit some observations in support of the application for a rehearing before the court takes the case under advisement. I do not expect to add, by the citation of additional authorities, to the labors of the distinguished gentlemen with whom I find myself associated in this case; but I shall take up and consider the case as one of first instance, referring only to such citations as are directly in line with the argument I shall present. I can not be charged with being an overzealous friend of railway corporations, for my boyhood experience in their service led me to believe that very frequently those entrusted with their management are heartless and inconsiderate of the welfare of others; and particularly of employees; and I

[*] There is an excellent note appended to this case in 24 Am. St. Rep. See, also, a note on assumed risk of servants, 15 Am. St. Rep., 183.—W. F. B.

bear in my breast much of what may be called resentment against that kind of management of these *quasi*-public institutions conducted by private enterprise, and for private gain, but indispensable in the complex commercial and industrial systems of the nation: No one sympathizes more deeply than I do with the hundreds of thousands of poor men upon whose skill, vigilance and fidelity, depends the successful operation of the railways of the nation, and in whose keeping is annually entrusted the personal safety of millions of men, women and children. Many of these become sacrifices to the dangers and hazards of their occupations; many are killed outright, while thousands are maimed and made helpless and dependent for life. I am of the number, daily growing stronger, more resolute and determined, I rejoice to say, who believe that railways must be owned and operated by the national government before what is properly known as "the railroad question" will have been settled in a way that is just and equitable and duly considerate of the true interests of the public. A railway company is a *quasi*-public corporation, and may exercise the sovereign power of eminent domain in securing its right of way, depot grounds, and other conveniences, necessary and proper to its successful operation, while in all other material respects it is held in our jurisprudence to be a private company. Courts and lawyers have to deal with railways as they find them, not as they wish they were. The duty of judge and counsel is to search for, and establish, the true relation between these institutions and their employees, and the public. That they are primarily designed by their owners to increase the private fortunes of the latter, will be disputed by no one; but private fortunes can only be increased, and the properties made valuable, by the roads being successfully operated in the interests of the shipping and traveling public. So far as their *quasi*-public character is concerned, it will not be disputed that they must serve all persons along their respective lines, in carrying freight and passengers, for a reasonable compensation, speedily and safely, and on

terms of equality, to their places of destination.  In the transportation of freight they are absolute insurers of its safety; in the carriage of passengers their duty is of a high and exacting nature, the slightest negligence rendering them liable, although they do not become insurers of the lives or personal safety of the latter.  The duty to freight shippers.and the traveling public, is of a higher and more delicate nature than the duty to those not connected with the road and those employed in daily operating its engines and cars.

In *Belair v. Chicago & N. W. R. Co.,* the question involved was whether the proper way to couple a locomotive to a way-car is to stand flat-wise or obliquely.  No question was raised or discussed as to whether it was negligence *per se* to go between moving cars to couple or uncouple them.

The plaintiff's conduct having invited, or contributed to, the injury, that fact will defeat the action, regardless of whether or not the defendant was negligent in not blocking the guard-rail.

The case was argued orally by *Harrington,* for plaintiff in error, and by *McHugh* and *Allen, contra.*

AMES, C.

This case was submitted and decided at a former term of the court, and an opinion filed on the 19th day of June, 1901.  See 62 Nebr., 358.  Afterwards a motion for a rehearing was granted, and the cause has been exhaustively reargued by the counsel for both parties and resubmitted for our consideration.  The vital question in the case is one of extreme importance, not only to the parties thereto and to railroad companies, but to all persons making use of mechanical devices in the conduct of their business, and to their servants and employees and to the public generally.  We do not conceive that, in the absence of legislation, any different rule of liability or responsibility is applicable to railroad companies than to other persons under substantially similar circumstances.  The plaintiff in error

**47**

was injured in the service of the company by reason of having one of his feet caught under an unblocked guard-rail while he was attempting to uncouple some cars belonging to one of the trains of the defendant. Other circumstances of the accident are set out in the former opinion, but are not required to be repeated here. The jury returned a verdict for the defendant in obedience to a peremptory instruction by the court. The charge of negligence by the company consists in its omission to block the rail. We are convinced that we fell into an error of fact in the statement in the former opinion that "it sufficiently appears from the evidence that long prior to the injury complained of, most railway systems had adopted the precaution of blocking the space between the two rails with wood, thereby lessening the danger to the employees." A more thorough examination of the record, aided by a more complete analysis thereof by counsel than we were favored with on the former hearing, has disclosed that there were wide differences of opinion between railway companies and their skilled managers with respect to the relative safety to their servants and to the public of the blocked and unblocked guard-rails; that a very large number—perhaps a majority—of the principal railway systems of the country continue the use of unblocked rails; and that in some instances the managers of the companies have used the blocked and unblocked, alternately, because of an inability to satisfy their own minds which, upon the whole, is the safer and more prudent course to pursue. There is also some evidence that in the opinion of some managers the relative safety of the use of the device of blocking, and the contrary, is dependent upon the situation of the road to which it may be applied, and the character of the soil over which the road extends, and the liability of the spaces between the rails becoming filled up with drifting sand and dirt. But the plaintiff offered no evidence to prove what is the effect, if any, of the use of blocks upon the safety of the transportation of persons and property over the railways, or the facility of moving trains. Upon this state of

the record can it properly be said that a railroad company is negligent because of using or of failing to use the block? We think not. It is a case not analogous to the use of defective machinery or of omitting the use of a device generally approved and obviously adapted to prevent or lessen a known and specific danger. The rule of law is that in such cases the employer must exercise such care and skill as, under the circumstances, reasonable and ordinary prudence requires to be used. The phraseology by which the rule is variously stated is somewhat indeterminate, because the idea sought to be expressed is in like degree vague, and its application in any case depends in a great measure upon the attendant facts; but it may be said generally that a man can not be held responsible in damages for the consequences of an error in judgment carefully formed after an intelligent survey of all the elements entering into the problem which he is called upon to solve. Such a responsibility would transcend any which any accepted theory of ethics has ever demanded, and would exceed the ability of civil tribunals to enforce or even to expound. Mechanical devices, like medicinal remedies, are innumerable, and the only sure test of either is that of experience; and until the latter has pronounced a definitive judgment, one who, in the exercise of ordinary skill and care, makes use of that which in his opinion is most conducive to the accomplishment of a desired result, can not be held responsible for the consequences. Extremes meet. Under the contrary rule, responsibility of each to all and of all to each, being theoretically universal, would practically cease to exist. Scientific progress would be arrested, and society would dissolve into its primary elements. Whatever may be the theological consequences of an "honest doubt," it can not be sufficient ground for recovery in a civil action for damages. Civil tribunals have not the attribute of omniscience, without which an issue pertaining thereto can not be tried or an adequate judgment thereon pronounced. Servitude in this age and country is voluntary. The servant assumes the risks incident to the

nature of his employment. Among these is the danger of error of judgment by his employer in the choice of tools and mechanisms with which his tasks are to be performed, and the latter can not be held civilly liable for choosing one of two or more mechanisms regarded by those called on to use such devices, and competent to judge of their safety from long use and experience in their operation, as among the best in use, even though an accident may happen to an employee in the use of the one selected that could not have occurred in the same manner had another kind been chosen. When experts skilled and experienced in their profession differ with respect to the choice of the means, remedies or mechanisms best adapted or adaptable to the accomplishment of a given end, especially if that end be not simple and single, but is itself compounded of many elements, courts and juries are incompetent to decide between them. A world-old problem is expressed by the inquiry, "When doctors disagree, who shall decide?" In whatever field of inquiry, proof of the best is a requirement which it is impossible to meet. That of the comparative is often beyond reach. The highest scientific attainments vary in their conclusions, while varying degrees of practical skill often differ where the former agree.

Judicial tribunals can not supervise or correct the mistakes of either. They can not so do, if for no other reason, because their decision, in a particular instance, decides nothing but the matter then being especially litigated. The decision furnishes no rule for the future guidance of the parties. The very act or omission which in one case has served as the occasion of punishment or exculpation may in the very next case, tried upon the same or following day, have an exactly opposite consequence. Such results would travesty the administration of justice, and so we think that the courts have nearly universally held that errors of judgment, not occasioned by willful ignorance or a reckless inattention to duty, are not evidence of negligence or a ground of civil liability.

As having a direct application to cases like the one at bar we quote the following authorities:

Thus, in *Titus v. Bradford, B. & K. R. Co.*,* 136 Pa. St., 618, 626, the court say: "All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for, in regard to the style of implement or nature of the mode of performance of any work, 'reasonably safe' means safe according to the usages, habits, and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they can not be allowed to set up a standard which shall, in effect, dictate the customs or control the business of the community."

And in *Reese v. Hershey*, 163 Pa. St., 253, 257: "The average untrained mind is apt to take the fact of injury as sufficient evidence of negligence. Moreover, the use of a dangerous machine is very commonly considered ground for holding the employer responsible, whereas the test of liability is not danger but negligence, and negligence can never be imputed from the employment of methods or machinery in general use in the business."

And in *Harley v. Buffalo Car Mfg. Co.*, 142 N. Y., 31, 34: "The master does not guarantee the safety of his servants. He is not bound to furnish them an absolutely safe place to work in, but is bound simply to use reasonable

* 20 Am. St. Rep., 944.

care and prudence in providing such a place. He is not bound to furnish the best known appliances, but only such as are reasonably fit and safe. He satisfies the requirements of the law if in the selection of machinery and appliances he uses that degree of care which a man of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the master liable, not a mere error of judgment. Here the belt was fastened at one of its splices with what was called the Buffalo belt fastener, and while the machine was running the fastener gave way and the belt parted and caused the injury to the plaintiff. It was shown upon the trial that there were several kinds of belt fasteners in use. * * * Under such circumstances how can it be said that the defendant violated any duty it owed to the plaintiff? It was impossible from the evidence to determine whether these fasteners were or were not the best in use for such a belt and such machinery as the defendant had at the time and place of the accident. Suppose a master, needing fasteners in his shop, makes inquiry among men of skill and experience as to the best kind of fasteners to use, and he is informed by some that one kind is the best, and by others that another kind is best, and so on, and he finally makes a selection, using his best judgment; and suppose it should turn out that it was not the best, could he, under such circumstances, be held liable for an injury received by a person in his service from the parting of a belt on account of the insufficiency of the fastener under any particular strain to which the belt had been subjected? But we may go one step further. Suppose, under such circumstances, he purchased fasteners for use in his shop, which, according to the judgment of his skilled workmen were found to be useful, convenient and safe, and the very best in use, can he then be charged with negligence for continuing to use them and be made liable to one who is accidentally injured by the parting of a belt? Suppose, under the circumstances which exist here, the defendant had adopted one

of the other fasteners for this particular belt and an accident had happened from its parting, there would have been substantially the same evidence for the jury and the same claim could have been made which is now made, that there was a question of fact for the jury as to its negligence in making the selection. This judgment can not be affirmed without subjecting the master in such a case as this to the risk of liability for injuries from the parting of a belt moving machinery in his shop, whatever fastener he may use, because if he uses one kind, according to the evidence in this case, it is easy to find persons who will testify that from their experience and observation some other kind was better. It must always be true that where several appliances are in use, each of which is regarded by men of skill and experience as safe and proper, the master can not be made liable for an injury to one of his servants, if in selecting the particular appliance he takes what according to his judgment is the best or most suitable, guided by his experience and observation and those of the skilled men in his employment. Upon the evidence in this case, it can not even be determined that the managers of the defendant erred in their judgment in the selection of this kind of fastener. But if there was an error in judgment, it was not such as to constitute that degree of negligence and want of prudence which, under the rules of law above cited, can impose liability for such an accident as this."

And in *Louisville & N. R. Co. v. Hall*, 91 Ala., 112, 121, 24 Am. St. Rep., 863, 870, it is said: "We have said, many times, that railroads are not required to adopt every appliance which some roads, even a majority of the well-regulated, have incorporated into their system of management. Something must be accorded to a diversity of judgment. If many well-regulated roads abstain from adopting a particular appliance which other roads, even a majority, consider wise precautions and adopt, such abstention can not be pronounced, *per se*, recklessness, or negligence."

And in *McGinnis v. Canada Southern Bridge Co.*, 49 Mich., 466, 472: "Railroading is at least a business with

many dangers, and scarcely any machine, implement or expedient made use of in it but is liable at some times and under some circumstances to imperil human lives. Suppose the block had been made use of and an accident had occurred which was thought to be attributable to it; how, on the plaintiff's theory, would the defendant have excused itself for adopting it? A jury verdict in favor of its use in a previous case could be no protection, for a verdict makes no precedent, and settles nothing but the immediate controversy to which it relates; the next jury on precisely similar facts is at liberty to find directly the contrary. The defendant would therefore be compelled to defend its adoption of the block by showing that it tended to make the management of trains more safe. But if the plaintiff in the suit were to proceed to show—what fully appears in this case—that though the device had been known for several years the experts in charge of railroads the country over, naturally solicitous as they must be, on grounds of personal interests if not of humanity, to diminish the risks to life, had failed to be convinced of the expediency of making use of the block, this showing would have made out a case against the defendant which could not well have been answered. The prima-facie showing that the device had been hastily if not heedlessly adopted would certainly have been very strong; and if the two cases, charging respectively negligence in rejecting and then in adopting the same device, could go to successive juries, we might witness the instructive result of a verdict against the defendant in both. But such a result is inconsistent with a proper administration of definite rules of law and justice."

And to the same effect is *Southern P. R. Co. v. Seley,* 152 U. S., 145, reversing same in 6 Utah, 319, cited in our former opinion, and, to a like effect, *Lake S. & M. S. R. Co. v. McCormick,* 74 Ind., 440.

We think that the foregoing decisions establish beyond controversy, both upon reason and authority, that an employer is not liable in damages for the consequences of mere error in judgment in furnishing structures, ma-

chinery and appliances for the use of his servants in the prosecution of his business, unless it is shown that such error is itself the result of negligent or willful ignorance or inattention. Of this latter there is no evidence in this case, and the instruction complained of was, therefore, rightfully given.

We recommend that the former judgment of this court be vacated and set aside and the judgment of the district court be

AFFIRMED.

DUFFIE, C., concurring.

I fully agree with all that is said in the foregoing opinion, and think that the case should be affirmed for the reasons above given. I wish to add, however, that I think the evidence shows that the plaintiff in error was guilty of contributory negligence and that on that account alone the law can afford him no relief.

SEDGWICK, J.

On account of the importance of the question involved, and the difference of opinion of the commissioners, argument was had before the court. There can be no doubt that, if the company acted in good faith, and with an honest desire to adopt the methods best calculated to promote the safety of its employees generally, as well as of the traveling public, it can not be charged with negligence, even though we should believe from the evidence before us that the purposes the company had in view would have been better served by blocking the rails, as plaintiff contends. There is still less reason to impute negligence to the company if the evidence shows that in the present condition of experience, it is impossible to say which method, upon the whole, affords the best guaranty of immunity from danger.

It was contended upon the argument that the claim that the unblocked guard-rail is less dangerous than the blocked rail was an afterthought, and not urged in good

faith by the company, and that for this reason the case should have been submitted to the jury.

Of course, the question of good faith on the part of the company in determining the advisability of blocking the guard-rails is a question of fact, and as such, when in dispute, is to be determined by the jury. If there was no reasonable ground for doubt as to the better course to pursue, the company can not defend against a charge of negligence by urging that it was in doubt, and acted on its best judgment. But if the best course to pursue, in the interest of the safety of the employees and of the traveling public alike, was an open question and difficult to determine, the company can not be charged with negligence in having adopted the one course rather than the other.

Upon examination of the evidence, it appears that there is no dispute that the safety of the employees of the company and the safety of the traveling public are both involved in the determination of the question of the advisabilty of blocking the guard-rails. So far as safety to the employees is concerned, there is a large mass of testimony from which it can not be determined with any degree of certainty which is the better practice; and when we further consider that there is much apparently reliable evidence tending to show that danger to the traveling public is increased by the practice of blocking the rails, and no evidence is offered to show that any system of blocking can be adopted without increasing that danger, we think there is an entire failure of proof that the company acted in bad faith in adopting the unblocked system.

We have therefore adopted the majority opinion of the commission, as prepared by Mr. Commissioner AMES, and the judgment of the district court is

AFFIRMED.

By the Court: For reasons stated in the foregoing opinion, it is ordered that the former judgment of this court be vacated and set aside and the judgment of the district court be affirmed.

NOTE.—*Contributory Negligence—Pleading—Corporate Existence—Master and Servant—Assumption of Risk by the Latter.*—Contributory negligence is purely a matter of defense, *which a plaintiff is not bound to negative in his complaint;*[*] its existence is not—as applied to the conduct of a party—a mere conclusion of law, but an ultimate pleadable fact. *Rolseth v. Smith,* 38 Minn., 14, 8 Am. St. Rep:, 637; *O'Connor v. Missouri P. R. Co.,* 94 Mo., 150, 4 Am. St. Rep., 364; *Potter v. Chicago & N. W. R. Co.,* 91 Am. Dec., 444; *Georgia P. R. Co. v. Propst,* 85 Ala., 203.

The court can judicially know of the existence of a public corporation—railroad company—without a pleading. *Baltimore & O. R. Co. v. Sherman's Adm'x,* 30 Gratt. [Va.], 602.

The assumption of risk by a servant; his knowledge of the danger; his continuation in service with such knowledge; his continuance under promise of master to remove danger. See notes on pages 736 and 810, 9 Am. St. Rep.—W. F. B.

---

[*] A contrary rule, however, prevails in Indiana.