OF THE

## STATE OF IOWA

AT

## DES MOINES, SEPTEMBER, 1913, AND JANUARY, 1914, TERMS

AND IN THE SIXTY-EIGHTH YEAR OF THE STATE.

---

PAUL A. KORAB, Administrator of the Estate of ELMER A. LITTLE, Deceased, Appellee, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Railroads:** NEGLIGENCE: RAIL GUARD: EVIDENCE OF CUSTOM: SUBMISSION OF ISSUE. Where it appeared from the testimony of witnesses experienced in the construction, maintenance and operation of railways, in an action for plaintiff's death caused by catching his foot in an opening between a guard rail and the main rail, that there was no uniform practice of blocking the space between such rails, some roads using blocking and others leaving them unblocked, and that there was an honest difference of opinion as to which was the safer plan, the court was not justified in saying as a matter of law that it was not negligence to leave the space unblocked, but the issue should be submitted to the jury and the evidence considered by it on the question of whether the company exercised reasonable care in choosing between the two methods of construction.

**Same:** REBUTTAL EVIDENCE. Where defendant claimed that neither the custom of blocking or leaving unblocked the space between the guard and main rails of the road would of itself constitute negligence, and the evidence was not limited entirely to the time of plaintiff's accident, it was permissible for plaintiff to show in rebuttal whether the rails on part of defendant's line had been blocked subsequent to the accident resulting in plaintiff's death; although not admissible to show negligence or an admission of negligence at the time of the accident in question.

**Evidence:** ADMISSIBILITY: FORMER ADJUDICATION. Where a former holding related merely to the legal effect of certain evidence the decision was not an adjudication of the question of its admissibility, when offered on a retrial of the cause.

**Railroads:** NEGLIGENCE: EVIDENCE: PREJUDICE. Where the only ground of negligence submitted was that of failure to block the space between a guard rail and the main rail, in which plaintiff was caught and received injuries resulting in death, the admission of evidence that loose boards were lying near the place while of no weight on the question submitted was not prejudicial.

**Same:** ASSUMPTION OF RISK. Where the court properly instructed on the subject of assumption of risk there was no error in refusing a requested instruction on the same subject, which did not in terms place the burden of proving the defense on defendant.

**Special interrogatories.** The court is not required to submit special interrogatories which do not call for ultimate facts.

**Railroads:** NEGLIGENCE: EVIDENCE: INSTRUCTION. The jury was properly instructed in this case that evidence upon the question of the use of blocked or unblocked rails might be considered in determining whether defendant was negligent in failing to block the rails in question, but the fact that other companies did not block the guard rails, or that experts differed as to the advisability of doing so, would not of itself excuse defendant, if the practice was negligent.

**Wrongful death:** DAMAGES. There is no fixed rule for determining the damages for a wrongful death, except a due consideration of all elements entering into the value of a life, as disclosed by the evidence. A verdict for $10,000 for the death of a railway brakeman twenty-five years of age, with reasonable prospect of advancement, is held not excessive though liberal.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

FRIDAY, NOVEMBER 14, 1913.

ACTION for damages, based upon negligence resulting in death of plaintiff's decedent. Trial to a jury, resulting in a verdict for plaintiff. Defendant appeals.—*Affirmed.*

*R. L. Parrish,* for appellant.

*Wade, Dutcher & Davis,* for appellee.

WITHROW, J.—I. This is an action for the death of Elmer A. Little, a brakeman upon a freight train operated by defendant. This case was first tried in May, 1909, and a verdict directed for defendant. Upon appeal the case was reversed and remanded for a new trial, the decision being reported in 149 Iowa, 711. This appeal involves the questions arising upon the retrial.

The petition alleges, in substance, that on the evening of October 10, 1907, at Oxford, Iowa, the decedent, Little, was in performance of the duties of his employment as a brakeman; that it was the duty of the defendant to block its guard rails, but that the defendant at that point negligently omitted to properly and sufficiently guard or block the space between the guard rail and main rail, so that said space became a dangerous trap to brakemen and other employees, in consequence of which negligence, without contributory negligence on the part of the decedent, his foot became caught and held fast in said space, and he was killed. The original petition also contained an allegation of negligence as to a pile of boards left negligently near the track, which was in some manner instrumental to the injury, but this ground of negligence was not submitted to the jury. The answer of defendant was a general denial, and by a separate division that defendant did

not at the time block, and for several years prior had not blocked, its guard rails, and that decedent assumed the risk thereof.

II. On the previous trial of this case, on the appeal to this court, we held the facts were such that the question of con-

1. RAILROADS: negligence: rail guard: evidence of custom: submission of issue.

tributory negligence should have been submitted to the jury, and the same was also held as to the assumption of risk. Counsel for appellant concede that in the present record there is no material change in the facts bearing upon those questions, and that the former decision must stand as the law of the case.

As to the additional question whether there was negligence of the defendant in permitting unblocked frogs in its yards, it was held in the former opinion that the facts were such as to justify its submission to the jury. On the retrial the defendant, this appellant, introduced much testimony, not presented at the first trial, tending to show that among experienced railroad men and construction engineers there was, at the time of the happening of this accident and is yet, an honest difference of opinion as to which is the safer, the blocked or the unblocked frog, and that under such evidence it could not be found that the defendant was negligent in permitting its frogs to be unblocked. Witnesses testified as to the custom or practice of about one hundred different railroads throughout the United States as to blocking frogs. The testimony disclosed that at or about the time material to this inquiry the many different witnesses examined upon this subject were familiar with the use of blocks for guard rails as a railroad appliance; that they knew of guard rails being blocked by some roads and unblocked by others in 1907 and before that time. Some of the witnesses testified that the unblocked frog was safer; others that the blocked frog might reduce the danger to trainmen; that if guard rails could be well blocked and kept well blocked they might be of some assistance; and another that "in my experience it is very

much safer to be without blocking than to have blocking that is not in perfect condition.'' Summing up the testimony of these many witnesses, all of whom may admittedly be considered as men of experience in their particular lines of work and duty, in the construction, maintenance, and operation of lines of railway, the evidence, when accepted in the light claimed for it by the appellant, permits the conclusion of fact that in 1907, and prior thereto, among the class of men so testifying, there was no uniform practice as to blocking frogs, but there was a difference of opinion, based largely upon operating advantages, including safety to the public and employees, as to which was the better plan; some roads blocking frogs and others not. From the conclusion thus drawn the appellant urges that under the law there can be no liability in the present case.

III. We accept the statement of the proposition relied upon by counsel in argument as fairly presenting the precise question raised, and which was not, on the former appeal, considered in the light of proof now in the record: ''Where the undisputed evidence shows that railroad companies at the time of this accident used both the blocked and unblocked frog, some using one and some the other, and that it was questionable which was the safest or most suitable for the business of the roads, then the use of the unblocked frog is not negligence. Where it is shown that it is questionable which is the safest or most suitable, or where it is shown that it was honestly considered by railway managements to be questionable which was the safest or most suitable at the time of the accident, then the adoption of either method cannot be said to be negligence.'' The question presented is one in which there is a want of harmony in the authorities, and which in the form stated has not been the subject of decision by this court, although, as we shall later note, what we consider to be the controlling principle, as bearing upon the question of duty and negligence, and proof of such, has had frequent announcement by us. It cannot be questioned but the cases relied upon

by the appellant give support to its claim, and in some instances decide without qualification that from a state of facts such as appear in this record there can be no finding of negligence. Of this line of cases we note *O'Neill v. C., R. I. & P. Ry. Co.,* 66 Neb. 638 (92 N. W. 731, 60 L. R. A. 443, 1 Ann. Cas. 337). In that case an employee who had been injured alleged negligence in an unblocked frog, which caused his injury. There was a directed verdict for the defendant. On appeal the judgment was reversed, but upon a rehearing it was affirmed. We quote from the opinion, as it quite clearly states as the law adopted by that court that which is now contended for by the appellant:

A more thorough examination of the record, aided by a more complete analysis thereof by counsel than we were favored with on the former hearing, has disclosed that there were wide differences of opinion between railway companies and their skilled managers with respect to the relative safety to their servants and to the public of the blocked and unblocked guard rails; that a very large number—perhaps a majority—of the principal railway systems of the country continue the use of unblocked rails, and that in some instances the managers of the companies have used the blocked and unblocked alternately, because of an inability to satisfy their own minds which, upon the whole, is the safer and more prudent course to pursue. . . . Upon this state of the record, can it be properly said that a railroad company is negligent because of using or of failing to use the block? We think not. It is a case not analogous to the use of defective machinery, or of omitting the use of a device generally approved, and obviously adapted to prevent or lessen a known and specific danger. The rule of law is that in such cases the employer must exercise such care and skill as under the circumstances reasonable and ordinary prudence requires to be used. . . . It may be said generally that a man cannot be held responsible in damages for the consequences of an error in judgment, carefully formed after an intelligent survey of all the elements entering into the problem which he is called upon to solve.

The discussion of the question by the Nebraska court is extended, but in the quotation above we have presented sufficient to indicate the line of argument which was followed.

The question was also considered in *Southern Pacific Ry. v. Seley,* 152 U. S. 145 (14 Sup. Ct. 530, 38 L. Ed. 391). In that case the decedent had lost his life because of an unblocked frog, and action for damages was brought by his administratrix in the then territory of Utah. The trial court refused certain instructions, and refused to direct a verdict on the motion of the defendant. Upon submission to the jury a verdict was rendered in favor of the plaintiff, which was affirmed by the Supreme Court of the territory. The case was taken on error to the Supreme Court of the United States. The evidence tended to show that the unblocked frog was then generally used in the West, and that it was better than the blocked frog. In the trial court the defendant had asked an instruction to the effect that if "the jury found from the evidence that railroad companies used both the blocked and the unblocked frog, and that it is questionable which is the safest or most suitable for the business of the roads, then the use of the unblocked frog is not negligence." This instruction was refused, and upon the final appeal the court held in the cited case that it should have been given. That court also held that, in view of the facts and the authorities cited by it in its opinion, the defendant was entitled, not only to the instruction prayed for, but that upon the whole evidence the prayer for a peremptory instruction in the defendant's favor ought to have been granted.

Among the cases cited by the appellant in support of its position are *Reese v. Hershey,* 163 Pa. 253 (29 Atl. 907, 43 Am. St. Rep. 795); *Dooner v. Del. & Hudson Canal Co.,* 171 Pa. 581 (33 Atl. 415); *Harley v. Buffalo Car Mfg. Co.,* 142 N. Y. 31 (36 N. E. 813); *Louisville R. R. Co. v. Hall,* 91 Ala. 112 (8 South. 371, 24 Am. St. Rep. 863).

In many cases it is held that when the question is an engineering problem, entering into the construction, to resolve

that problem in favor of one method as against another, when there existed honest differences of opinion as to which was better, does not constitute actionable negligence.

There is another line of authorities which holds to the rule that under such conditions it is yet a question for the jury to determine whether, in adopting a particular method of equipment or construction there was the exercise of ordinary care; but recognizing that the adoption of one method over another, and as to which there may have been difference of opinion among experts, while tending to show ordinary care, is not conclusive on that question. Or, stated differently, when such question arises, and reasonable minds might differ as to whether there was the exercise of ordinary care in adopting the plan as safer to the employees, it is a question for the jury. Of course, if but one conclusion could be reached, the duty of determining the question would be in the court. Such cases are based upon the rule that due regard must be had for the safety of the employees, and while from the fact of accident or injury under particular circumstances negligence may not be inferred, if the cause is such that there may be reasonable differences of opinion as to whether it was or was not negligent, the jury must decide it.

Upon these questions this court has frequently passed; but before referring to our previous decisions, we would notice the expressions of the courts of some other states and of law writers, which are in full support of what we conclude to be the rule of our own state. In discussing the question in his work on Master and Servant, volume 3, section 947, Mr. Labatt recognizes a division in judicial opinion, as regards it, and one group of states as holding to the rule that ''the master's conformity to general usage is regarded merely as evidence tending, more or less strongly, to exculpate him from the danger of negligence,'' and cites as states holding to that doctrine, Alabama, California, Colorado, Illinois, Iowa, Kansas, Kentucky, Maine, Michigan, Minnesota, Missouri, New York, South Carolina, Texas, Vermont, Washington, and Wis-

consin, and some of the federal courts. That writer, in the
course of his discussion of the subject, which is based upon
the cases cited by him from the states named, employs the fol-
lowing language:

The principle upon which a large number of decisions
are based, some' of which emanate from the courts whose rul-
ings are reviewed in the preceding sections, is that embodied
in the remark of Willes, J., with reference to the plea put
forward by the defendant in a well-known case, that 'no usage
could establish that what is in fact unnecessarily dangerous
was in law reasonably safe as against persons towards whom
there was a duty to be reasonably careful.' That is to say,
the position is taken that custom furnishes no excuse, if the
custom itself is negligent. In this point of view, the master's
conformity to general usage is regarded merely as evidence
tending more or less strongly to exculpate him from the
charge of negligence. After it has been shown that the de-
fendant had complied with the usage of other employers in
the same line of business, the question whether the particular
instrumentality or method was reasonably safe still remains
open, and, unless it is decided in the master's favor, he must
indemnify the servant.

In *Smith v. R. R. Co.*, 69 Mo. 32 (33 Am. Rep. 484),
action was brought by a brakeman for injuries resulting from
having his foot caught in a guard rail. An instruction was
asked which embodied the claim relied upon by appellant; that
is, if the style of track and guard rail were in general or
universal use, and that the same were placed as located in the
usual or approved methods in use by the best constructed
roads, then there could be no recovery. The instruction was
held by the appellate court to be erroneous.

*Huhn v. Mo. Pacific R. R. Co.*, 92 Mo. 440 (4 S. W. 937),
presented a question quite similar to the one now being con-
sidered. Plaintiff's intestate, was killed while engaged in
drawing a coupling between cars which were in motion.
His foot caught between the guard rail and the track,
with the result that he was held and crushed by the moving

cars. There was presented in the evidence the question of fact as to the safer method of guarding against accidents and injuries from open frogs, and whether by blocking or by having them unblocked, such would be secured. In finally passing upon the question of negligence under such fact the court in the case cited said:

It is true that the question of negligence cannot be resolved alone upon the fact as to how many roads do or do not block the guard rails; nor can it be said the company was guilty of negligence simply because the blocks made it safer for the employees. These are facts, however, to receive a proper consideration from the jury. It may be that the use of blocks would be imprudent on the main line, and quite essential in the car yards, where the employees are constantly engaged in coupling and uncoupling cars; for, as the danger increases, the care should increase. The guard rail in this case was on the side track leading to the main track. The defendant was not called upon to discard the existing rails. The defendant seems to have recognized the propriety of using the blocks in some of its car yards. There is certainly evidence that it does use them in one. They are used by some other roads; and there can be no doubt but that the evidence here, in no way contradicted, shows that they add much to the safety of the employees. Where the facts are either disputed, or different inferences may be fairly drawn from the undisputed facts, the question of negligence should be submitted to the jury.

In *Martin v. R. R. Co.*, 94 Cal. 326 (29 Pac. 645), a brakeman had been killed when engaged in coupling cars. The special negligence charged was in using particular couplings, of different types, upon the two cars, couplings which when fitted to one of their kind worked properly, but when applied to another type, it is claimed, were dangerous. While that case differs from the present one in the facts, there arose in it the question we now consider, and upon which the court said: "The instruction asked by appellant that if this character of coupling was in general use among railroad companies, then

it was not negligence upon the part of the appellant to use it, was properly refused. Such general use was evidence tending to show ordinary care in the selection of the coupling, but not conclusive evidence.''

These cases recognize the principle which has governed the decisions of this court in many cases, and which has late expression in *Kirby v. C., R. I. & P. Ry. Co.,* 150 Iowa, 594. After having discussed the question and referred to previous cases decided by this court, the conclusion was announced as follows:

In accordance with the views thus expressed, evidence of the general use of locomotives in design and plan such as the one in question by reasonably careful and prudent railways was properly received as bearing on the question of defendant's negligence in using such style of locomotive; but such evidence, although uncontradicted, would not justify the giving of an instruction to the effect that, if locomotives such as that in question were in general use on reasonably careful and prudent railways, then the verdict must be for defendant, for railways which are in general well managed in respect to prudence and care in the selection of machinery may nevertheless in particular instances be negligent, and it cannot be said that the concurrence in such negligence by many well managed railroads changes the character of the act itself.

In others of our cases the same rule has been stated, where custom or usage as to the manner of doing a particular act, or of construction, was presented; but in all instances it has been left as a question of fact for the jury to determine whether, even though such method was followed, in so doing the defendant acted with reasonable care and prudence, and evidence to so show was competent. *Austin v. C., R. I. & P. Ry. Co.,* 93 Iowa, 238; *Metzgar v. C., M. & St. P.,* 76 Iowa, 387; *Wilder v. Cereal Co.,* 134 Iowa, 451; *Hall v. Ry. Co.,* 140 Iowa, 32.

Holding to the spirit of our previous decisions, not from

an indulgent purpose because of their having been the utterances of this court, but because we are convinced that they are based upon a principle which should not be overthrown—that is, that negligence or want of negligence cannot be made to depend upon matters of opinion alone, nor upon the declaration of a witness who testifies as an expert upon a question which yet involves matters from which common knowledge and observation may yield opinions entitled to some evidential weight—we conclude that the contention of appellant, as broadly stated by counsel, cannot be admitted. We prefer and adhere to the rule that, while evidence of the character in question is at all times admissible under issues properly framed, it is not necessarily conclusive upon the subject, and that it is yet within the province of the jury to determine whether, in choosing between two or more methods of construction or of guarding against injury, the master exercised reasonable care.

IV. The defendant requested the trial court to give to the jury instructions Nos. 1, 2, 2½, and 3, which request was refused and because of such error is charged. The first two related to and were based upon the proposition stated by counsel as the rule of law which should control. From the conclusions reached by us, as given above, it follows that we find no error in such refusal.

V. Instruction No. 2½, which was refused, related to certain evidence, which had been admitted over defendant's objection, as to whether the guard rails had been blocked on the line of the appellant company, and in the yards at Iowa City, after the time of the accident resulting in the death of Little. It is the law that evidence of subsequent conditions is not admissible as tending to show negligence or admission of negligence at a given time preceding. *Fitter v. Iowa Tel. Co.*, 129 Iowa, 610. The evidence upon which the requested instruction was based was received in rebuttal. It was directed to the testimony introduced on the part of the defendant upon the question

2. SAME: rebuttal evidence.

as to the custom of roads in blocking frogs, some of which testimony was not limited to a time prior to the injury. The instruction which was asked contained among other provisions that which stated that such evidence could not be considered in determining the advisability of using blocked or unblocked guard rails. The question of use and method while largely, was not entirely, limited to a time preceding October, 1907. It was not, of course, claimed that on or near that day there was a change in view among railroad engineers and operators as to which was the better, and we are of the opinion that the evidence was not improper in rebuttal, as bearing upon the question of the practice of railroads in that respect, in the light of the claim upon which the whole defense was practically rested, which was that, in view of the shown division of opinion on the subject, neither the use of the unblocked frog or the blocked frog would have been negligence, and that evidence upon that subject would not tend to show negligence or want of it, but only that as to certain roads one means of caring for the frogs was employed.

VI. On the former trial on appeal we held that the evidence which had been introduced as to loose boards lying near the place of the accident did not show negligence. During the trial which resulted in the judgment from which this appeal was taken, evidence of the same character was admitted over the objection of appellant, and this is now urged as error, it being claimed that, as to such, there has been an adjudication. The former holding was not directed to the admissibility of the evidence, but to the legal effect of that which had been introduced on that subject. Evidence which may be competent to show circumstances and surrounding conditions may yet be short of proving an ultimate question.

3. EVIDENCE: admissibility: former adjudication.

In the present hearing the trial court submitted but

one ground of negligence, that of the unblocked frog, and in
such view the evidence as to loose boards near

4. RAILROADS:
negligence:
evidence:
prejudice.

by, while of no weight as to the final question,
was not of itself incompetent, and its admission worked no prejudice.

VII. The third requested instruction relates to the assumption of risk. We have given attention to the instruction of the trial court on this subject, and find in it nothing
which falls short of what it was its duty to

5. SAME: assumption
of risk.

state to the jury. The requested instruction
did not, in terms place the burden of proving
such defense on the defendant, and this was done in the instruction of the trial court. The jury having been properly instructed upon this subject there was no error in the refusal.

VIII. Special interrogatories were asked by the defendant, all of which related to the difference of opinion or usage among railroad companies as to the relative safety of the
different methods of using blocked or un-

6. SPECIAL INTERROGATORIES.

blocked frogs. In the light of the conclusions reached by us as to the main question, the interrogatories did not call for ultimate or controlling facts in the case. The trial court was not required to submit them. *Runkle v. Ins. Co.*, 99 Iowa, 421, *Thomas v. Schee*, 80 Iowa, 237.

IX. Instruction No. 6, given by the trial court, was the one relating to the single charge of negligence relied upon. The court told the jury that the evidence of the various
witnesses upon the question of the use of

7. RAILROADS:
negligence:
evidence:
instructions.

blocked or unblocked frogs might be considered in determining whether or not the
defendant was guilty of negligence, but that the fact that others did not block the guard rail, or that experts differed as to the advisability of so doing, would not of itself excuse the defendant, if the practice itself was negligent. The standard of duty and rule as to proof were properly given, and were in harmony with what we find to be the law governing the case.

X. The jury returned a verdict for $10,000, for which judgment was entered. This is claimed to be excessive. As we have said at other times, there is no fixed guide which a jury must follow in reaching a verdict in cases of this nature, excepting that due consideration must be given to all elements which properly enter into the value of a life, as they appear in the evidence, and properly considering such, in the exercise of a fair discretion, the amount of recovery should be fixed. While in this case the award of the jury was liberal, yet in the light of the age of the deceased, twenty-five years, his expectancy of life, his earnings, and his reasonable prospects of advancement in his employment, we do not feel that the finding of amount was an abuse of discretion which requires correction.

8. WRONGFUL DEATH: damages.

The judgment of the trial court is—*Affirmed*.

WEAVER, C. J., and LADD and GAYNOR, JJ., concur.