ELVIN J. HALSEY, APPELLEE, V. MERCHANTS MOTOR FREIGHT, INC., A CORPORATION, APPELLANT, IMPLEADED WITH THE SNOW CORPORATION, APPELLEE.

71 N. W. 2d 311

Filed July 8, 1955. No. 33730.

McCormack & McCormack and Joseph H. McGroarty, for appellant.

Shrier & Shrier and Fischer, Fischer & Fischer, for appellee.

Heard before SIMMONS, C. J., CARTER, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ., and FLORY, District Judge.

SIMMONS, C. J.

This is an action for damages for personal injuries arising from an accident in unloading goods from a truck of defendant, Merchants Motor Freight, Inc. The action is based on its alleged negligence as hereinafter recited. This corporation will hereinafter be referred to as the carrier. The consignee of the goods is the defendant, the Snow Corporation, hereinafter referred to as Snow. Plaintiff was an employee of Snow.

Snow answered that, as plaintiff's employer, it had paid him workmen's compensation, joined in the prayer of plaintiff's petition, and prayed for subrogation.

The carrier answered, denied generally, alleged that the unloading was under the supervision and direction of Snow, denied negligence on its part, and alleged that plaintiff was negligent.

Trial was had. At the close of all evidence, the carrier moved for a directed verdict. The motion was overruled. The jury returned a verdict for plaintiff upon which judgment was rendered.

The carrier moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. These motions were overruled. The carrier appeals.

We reverse the judgment of the trial court and remand the cause with directions to sustain the motion of the carrier for judgment notwithstanding the verdict.

The carrier presents here two contentions. First, that there was no negligence shown and, if there was negligence causing plaintiff injury, that the carrier was not responsible for it.

All evidence recited herein, excepting the tariffs relied on by the carrier, is found in plaintiff's case-in-chief.

On March 19, 1953, the carrier received a shipment billed as 178 pieces of steel wire weighing 21,525 pounds destined to Snow as consignee. Carriage was by motor transport in a trailer 32 feet long. The transport arrived at Snow's place of business in Omaha on March 23, 1953. The transport was placed at Snow's place of business with the trailer perpendicular to a door opening therein and about 5 or 6 feet therefrom. The trailer sloped down toward the entrance. The 178 pieces were bundles of steel rods coated with oil or grease, and weighing from 100 to 125 pounds each. These bundles in turn were in larger bundles made up of from 15 to 20 of the small bundles, banded together by steel bands. They were in the forward end of the trailer and accordingly at a distance in the truck away from the open end at the Snow warehouse. Snow's foreman, two employees of Snow, and the driver, undertook to unload the goods. One of the employees was in the trailer with the driver. The foreman and the plaintiff were outside.

The men in the trailer cut the bands around the larger bundles using a hammer and chisel furnished by Snow. Snow also furnished a truck with two wheels on one end and legs on the other for moving the goods from the front end of the trailer to the rear. A picture of the two-wheel truck is in evidence. It appears that the legs and wheels are about of equal height or, stated otherwise, when resting on the wheels and legs, the top of the truck is parallel with the surface on which it rests. The handles project beyond the legs, and without other support, for a distance about half the

length of the truck between the wheels and legs. Such a truck was ordinarily used in such an operation.

The two men in the trailer loaded 8 to 10 of the small bundles on the truck, wheeled it to the rear end, and turned it around with the handles facing the door and the legs about a foot from the end of the trailer. The hammer and a block of wood were then put behind the wheels to prevent the truck moving.

Plaintiff and the foreman would then take the bundles, one at a time from the truck, carry them to the building, and place them on a conveyor going into the Snow warehouse. The men on the trailer would push the bundles one at a time toward the men on the ground, using their knees or hands to hold the remaining bundles, and when the men on the ground were ready for another bundle they would release the pressure from their knees and slide another bundle forward. The men in the trailer "would use their judgment as to whether they would have to hold any of those back to keep them from flying down and hitting us."

That procedure was followed for several hours without mishap. In the afternoon, the two-wheel truck with 8 or 10 bundles on it had been placed at the rear of the trailer. Two bundles had been removed. A third bundle had been removed, and plaintiff and the foreman had their backs toward the trailer placing a bundle on the conveyor, when the remaining bundles fell from the truck, hit plaintiff, and seriously injured him. No one testified as to how or in what manner they slid or fell. Immediately prior to the accident, the two men in the truck "were just standing there." After the accident, the legs of the two-wheel truck were over the edge of the trailer.

The trial court instructed the jury that it was the duty of the carrier to unload the truck.

The trial court submitted the cause on the plaintiff's allegation that the carrier was negligent in failing to securely anchor the truck so that it could not move or

tip while it was being unloaded by the plaintiff.

As to the liability of the carrier, plaintiff relies upon the provision of the controlling tariff that requires delivery "to a consignee at a dock, platform, doorway or other facility directly accessible to motor vehicle."

The carrier relies on an exception which provides that "Where an article (or articles) in a single container or shipping form tendered, weighs 500 lbs. or more, * * * loading or unloading shall be performed by the shipper or consignee, as the case may be." Plaintiff construes this tariff to mean that the shipment when "tendered" for loading must be shown to have weighed 500 pounds or more before the consignee is required to unload. There is no proof that the small bundles were in the larger bundles when tendered for loading.

In the absence of evidence, the presumption is that goods transported by a carrier arrived at their destination in the same condition in which they were shipped. 13 C. J. S., Carriers, § 254, p. 538.

In the absence of evidence that the "single container or shipping form" had been changed in transit by the carrier, we think it patent under the tariff provision that Snow was required to unload the shipment. In fact it appears that Snow so construed the tariff and undertook to perform that duty. This is strengthed by the further provision of the tariff that "If requested, carriers will undertake, in behalf of the shipper or consignee, as the case may be, to employ additional help. No charge will be made for labor performed by the truck driver, * * *." Here obviously the truck driver was helping Snow unload the shipment.

But plaintiff argues that the waybill reciting that 178 pieces were shipped meets the contention of the carrier that the exception of the tariff controls. That contention is answered by the exception. It refers not to an article in a single container, but to "article (or articles) in a single container or shipping form." Here the pieces (or small bundles) were articles in a "single

* * * shipping form." That the large bundles weighed in excess of 500 pounds is not in dispute.

We think it clear under this evidence that the duty of unloading the shipment rested on Snow; that Snow was performing that duty; and that the plaintiff when injured was an employee of Snow and not an employee of Snow loaned to the carrier.

Plaintiff's contention that there was evidence of negligence sufficient to sustain a jury's verdict on the issue submitted is not sustainable.

There is evidence that in the unloading of merchandise from trailers where the merchandise was in the front end of the trailer, that ordinarily the two-wheel truck was used.

In Weed v. Chicago, St. Paul, M. & O. Ry. Co., 5 Neb. (Unoff.) 623, 99 N. W. 827, it was held: "Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence, and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business."

It is stated in 56 C. J. S., Master and Servant, § 267, p. 1031, that: "A master who employs the usual and customary methods employed by prudent and careful men engaged in similar business is generally not liable for injuries to a servant, provided such methods do not disregard the servant's safety." See, also, 35 Am. Jur., Master and Servant, § 124, p. 553.

We have repeatedly followed this rule. We call particular attention to our decision in Brown v. Swift & Co., 91 Neb. 532, 136 N. W. 726.

Plaintiff relies on our rule as stated in Gilliland v. Wood, 158 Neb. 286, 63 N. W. 2d 147, wherein we held: "Negligence is ordinarily a question of fact which may be proved by circumstantial evidence and established physical facts. If such facts and circumstances, and the inferences that may be drawn therefrom, indicate with reasonable certainty the existence of the negligent act

complained of, it is sufficient to sustain a verdict by the jury."

Plaintiff also relies on our rule as stated in Taylor v. J. M. McDonald Co., 156 Neb. 437, 56 N. W. 2d 610, wherein we held: "'All that plaintiff was required to do was to establish, to a reasonable probability, that the accident happened in the manner alleged in his petition, and where facts and circumstances are established from which the way the accident happened could be logically inferred, it was not error to submit that issue to the jury.' Circumstantial evidence may properly be considered by the jury in connection with the direct evidence offered in determining if the defendant was negligent and, when controlling rules of law are properly complied with, circumstantial evidence alone may be sufficient to sustain a verdict. * * * Nor is a plaintiff required to exclude the possibility that the accident might have happened some other way."

The carrier relies on our rule stated in Jones v. Union Pacific R. R. Co., 141 Neb. 112, 2 N. W. 2d 624, and followed in In re Estate of Bingaman, 155 Neb. 24, 50 N. W. 2d 523, as follows: "Circumstantial evidence cannot be said to be sufficient to sustain a verdict or to require submission of a case to a jury depending solely thereon for support, unless the circumstances proved by the evidence are of such nature and so related to each other that the conclusion reached is the only one that can fairly and reasonably be drawn therefrom."

The rules are not in conflict.

There is another rule that is applicable here: "Negligence is never presumed, and cannot be inferred from the mere fact that an accident happened." In re Estate of Bingaman, *supra.*

Is there circumstantial evidence indicating with reasonable certainty that this accident arose because the carrier failed to securely anchor the two-wheel truck so that it could not move or tip while it was being

unloaded? Is that the only conclusion that can fairly and reasonably be drawn from the evidence?

Plaintiff relies on three facts shown by the evidence: (1) The location of the two-wheel truck at the rear of the trailer anchored by the hammer and block of wood; (2) that the small bundles fell from that truck and hit the plaintiff; and (3) that after the accident the legs of the two-wheel truck were off the edge of the trailer.

This argument is necessarily premised on the contention that the two-wheel truck moved so that its legs slipped off the end of the trailer bed and caused the bundles to fall upon the plaintiff. There is no evidence to sustain such a contention. The two men working in the trailer did not testify. All that the evidence shows is the location of the two-wheel truck before and after the accident. Whether it moved before the bundles fell on the plaintiff, and caused that falling, or whether it moved during the shifting of the bundles, or whether it was moved after the event and during the excitement caused by the accident, can only be in the field of speculation and conjecture.

Is the conclusion that the accident happened in the way claimed by the plaintiff the only one that can fairly and reasonably be drawn from the evidence? We think not.

The evidence suggests another conclusion as to what happened which is just as reasonable as the one which plaintiff pleaded and upon which his cause was submitted to the jury.

The evidence shows that the trailer did slope materially downward toward the end from which the bundles were being taken. Obviously the load-carrying surface of the two-wheel truck sloped in the same direction. There was nothing on the two-wheel truck at the lower end to prevent the bundles from responding to the forces of gravity and sliding or rolling off the two-wheel truck.

The evidence is that these bundles were coated with grease and oil. A cross section of the bundles would show a rather round bundle. The evidence is that during the unloading process before the accident the men in the truck would use their legs to hold the bundles remaining on the truck to "keep them from flying down and hitting" the men on the ground. At the time of the accident "They were just standing there." It is just as reasonable, if not more reasonable, to conclude that the accident happened in the way that the employees anticipated one could happen and was guarded against earlier in the work of unloading, as to conclude that it happened from a tipping or moving of the truck. As was said in Brown v. Swift & Co., *supra,* "A servant of mature years and of ordinary intelligence should, in performing the duties of his employment, take notice of the ordinary operation of familiar laws of gravitation and govern himself accordingly."

In O'Neill v. Chicago, R. I. & P. Ry. Co., 66 Neb. 638, 92 N. W. 731, 60 L. R. A. 443, we quoted with approval this sentence: "The average untrained mind is apt to take the fact of injury as sufficient evidence of negligence." Here the plaintiff established only the fact of an accident and injury. We further said: "Whatever may be the theological consequences of an 'honest doubt,' it can not be sufficient ground for recovery in a civil action for damages." Plaintiff, at best here, has established only an honest doubt as to how this accident happened.

It follows that plaintiff failed to prove facts and circumstances indicating with reasonable certainty the existence of the negligence complained of.

The trial court erred in not sustaining the motion of the carrier for a directed verdict on both of the grounds advanced by the carrier.

We held in Krepcik v. Interstate Transit Lines, 152 Neb. 39, 40 N. W. 2d 252, that: "In a case where a

motion has been made at the close of all of the evidence for a directed verdict, which motion should have been sustained but was overruled and the case was submitted to a jury which returned a verdict contrary to the motion, and a motion for judgment notwithstanding the verdict is duly filed, it is the duty of the court to sustain the motion and render judgment in accordance with the motion for a directed verdict."

The judgment of the trial court is reversed and the cause remanded with directions to sustain the carrier's motion for judgment notwithstanding the verdict.

REVERSED AND REMANDED WITH DIRECTIONS.