Daisy Myrtle Bowers, Administratrix, Appellee, v. Carl B. Kugler, Appellant.

1 N. W. (2d) 299

. Filed December 12, 1941.  No. 31209.

*Baylor, Tou Velle & Healey, Butler, James & McCarl* and *Howard S. Foe,* for appellant.

*L. A. Sprague, James H. Falloon, Gerald M. Mullen* and *John C. Mullen, contra.*

Heard before Simmons, C. J., Rose, Eberly, Paine, Carter, Messmore and Yeager, JJ.

Paine, J.

Plaintiff, as administratrix, brought this action to recover for the death of her husband, killed in a motor vehicle accident near Red Cloud.  The jury returned a verdict for

$15,600, which the trial judge ordered reduced to $13,600. The defendant appeals from the judgment entered thereon.

The plaintiff's husband, Delbert L. Bowers, aged 29, was the owner and driver of a practically new 1937 1½-ton Chevrolet truck, in which he hauled fruit and stock and other things to central and western Nebraska, earning about $200 a month. He was driving east at the time of the accident, and two men were riding with him.

Carl B. Kugler, defendant, doing business as the Kugler Oil Company, with his principal place of business at Culbertson, was the owner of a gasoline transport, consisting of a tractor, on which was the cab and the trailer, carrying a loaded gasoline tank. This gasoline transport was driven by Lester Elliott, and Gus Lonn was riding with him. All five men in the two trucks were burned to death in this accident.

It appears that about 11 o'clock on the night of September 22, 1938, which was a clear night, the Bowers fruit truck was going east on highway No. 4, and approaching a bridge located between two hills about four miles west of Red Cloud, the highway being about 24 feet wide, with only a 16-foot road across the bridge. The gasoline transport was going west, and, it is charged, was negligently run against the north side of the bridge with force and violence, especially at the east end of the bridge, breaking off a wooden guard-rail and scarring the steel supports, and the steel channel irons along the north side of the bridge were damaged clear across the bridge.

It is charged by plaintiff that the transport dragged against the north side of the bridge and, as it came off the west end of the bridge, sideswiped the fruit truck, which was on its side of the road, throwing it off the highway. The gasoline in both trucks ignited and burned for hours, destroying both trucks.

The evidence of the condition and position of the trucks is important, and the testimony of the witnesses varies somewhat on the exact location of the two trucks after the collision, but from a review of all the evidence it may be

stated that the trailer part of the gasoline transport was bottom side up in the middle, or to the south side, of the highway, at a distance of 25 to 75 feet west of the west end of the bridge, and the cab on the tractor part was tipped over on its side on the south half of the road, but still attached. The sheriff was finally able to allow four or five cars to proceed on the north side of the gasoline transport before it blew up between 4 and 5 o'clock in the morning, but no traffic could get by on the south side.

The fruit truck, headed east, was in the ditch off the road on the south side, partly on the fence, about 14 feet from the west end of the bridge, and lots of pears and some apples were a smouldering mass. The front left end of the cab on the fruit truck was badly bent and caved in, and on the left side the fender was caved down on the wheel, and the left front tire was mashed and blown out. While the headlights were not broken, it is clear, from the evidence as to tracing the marks from the roadbed to where it was lying, that the transport had struck the left-hand side of the fruit truck when it was about 12 feet west of the west end of the bridge, and had bent in the fenders, and bent the front left wheel back underneath the motor.

Gilbert Reed lived on his farm near this bridge. They had gone to bed upstairs when, Mrs. Reed testified, she was awake and saw a car coming from the east go by and heard a crash. They ran to the window, and Mr. Reed testified that the flames were leaping up from something burning in the road. They dressed and rushed out, Mrs. Reed and son reaching the scene of the accident first, as Mr. Reed stopped to telephone the sheriff, who came out immediately, and stayed during the night and the next day. There was a hole in the right side, and near the top, of the transport tank, out of which the flames were shooting. As soon as Mr. Reed arrived at the place of the accident, he saw a man coming up out of the creekbed on the south side of the road, entirely denuded except for his boots and the gloves on his hands, and entirely covered with burns. This man was Lester Elliott, the driver of the gasoline

transport. He was taken into the Reed home and placed on a cot, and told them to telephone his employer, the defendant, at Culbertson, Nebraska, and notify him of the accident; the objection to this evidence being sustained by the court.

Darrel Smith, who arrived within five minutes after the accident, met Gus Lonn in the road, with his hair and eyebrows burned off, his shirt partly burned off, and he had on no trousers. The objection to the offer to prove that he said that Elliott, the driver of the transport, had hit another transport was sustained.

The defendant sets out 20 errors relied upon for reversal, insisting that the court should have sustained the defendant's motion for a directed verdict, that the court committed error in permitting certain evidence to be introduced, and that the court erred in giving instructions Nos. 1, 2, 6 and 8 on its own motion, and in refusing to give instructions Nos. 18, 23 and 26 tendered by defendant.

The defendant objects to instruction No. 1, and charges that the trial court copied the pleadings of the parties almost verbatim, which the defendant insists has been condemned repeatedly by this court. The plaintiff denies in her brief that the pleadings were copied, and argues that the trial court gave only a brief synopsis of the same.

This method of instructing on the issues was discussed at considerable length in the case of *Merritt v. Ash Grove Lime & Portland Cement Co.*, 136 Neb. 52, 285 N. W. 97, and in that case it was held that it was not prejudicial error for the trial court to summarize six pages of pleadings into three pages of instruction No. 1.

It was further discussed in the later case of *McClelland v. Interstate Transit Lines*, 139 Neb. 146, 296 N. W. 757, and it is said that, if copying the pleadings at length results in prejudice to the complaining party, it is a sufficient ground for reversal.

However, in the case at bar, we cannot see how prejudice resulted in this case because the trial court followed the pleadings too closely.

Strenuous objections are made to the admission of certain evidence, especially in the testimony of Gilbert Reed as to his conversation with Elliott, the driver of the transport, whom he met coming up the bank of the dry creek, badly burned, within a few moments after the accident happened.

Repeated strenuous and lengthy objections were made by defendant's counsel to any *res gestæ* evidence, and the jury were excused, and arguments were made to the court.

Mr. Reed was asked: "What did you hear him say? A. He was very profane, and —" the last part of the answer was stricken out on Mr. Baylor's motion. "A. I said, 'What did you hit?' Q. What did he say? A. 'A God damned stock truck.' * * * A. I made the remark to 'Come over here!' or 'Shut up and come over and we'll help you;' and after he got over there, I said, 'What did you hit?' and he said, as I have answered before; and I said, 'What are you driving?' and he said 'A Kugler Oil Company transport.' * * * I then says, 'How did it happen?' * * * Q. What did he say? * * * Mr. Baylor: Object to the question as incompetent, irrelevant and immaterial, hearsay, as calling for the statement of another which is merely a narration of past events, and for the statement of another as to that other person's conclusion; and, further, that it calls for a statement by the witness of what another said, which in no way would be binding upon a principal, and no foundation having been laid. The Court: Overruled. A. 'Oh, my God! it might have been my fault; I thought he was coming on.' Mr. Baylor: I move to strike out the answer as the mere statement of what was said by another which was merely that other person's conclusion, and especially that part of the answer with reference to 'it might have been my fault' as particularly that other person's conclusion, and not binding in any way upon the defendant, not a part of the *res gestæ*, and a mere narration and not a statement of fact. The Court: Objection overruled."

The last statement of the witness was a mere opinion or

statement of his conclusion; it was not binding in any way on the defendant, it was not a statement of fact.

*Res gestæ* is the act speaking for itself. It embraces all those circumstances which are illustrative of the main act. The lapse of time may be more or less, provided the declaration is connected with, and caused by, the event, and tends to explain it, and was not made as an afterthought. 20 Am. Jur. 553, sec. 662.

The *res gestæ* statement must be made under the immediate force of circumstances, and not as an afterthought.

The admission of *res gestæ* statements is designed to bring out all reasonable means of ascertaining the truth. While such statements are hearsay, they are properly admitted, because they are so closely connected with the main transaction as to be a part of it. Such *res gestæ* declarations are regarded as verbal acts, and are as competent as any other evidence when relevant to the issues. *Hatzakorzian v. Rucker-Fuller Desk Co.*, 197 Cal. 82, 239 Pac. 709, 41 A. L. R. 1027; 3 Wigmore, Evidence (2d ed.) sec. 1747; *Roh v. Opocensky*, 126 Neb. 518, 253 N. W. 680.

The fact that the declarant died only a short time subsequent to his utterance has sometimes been considered an important element in determining the admissibility of his statements, but the better rule is that this fact has no weight in itself in determining the admissibility of the statements made. 20 Am. Jur. 570, sec. 675.

Although there are some exceptions, a statement of a mere conclusion or opinion is not ordinarily admissible as a part of the *res gestæ*, which should be confined to declarations which relate to provable facts. 22 C. J. 469; *Field v. North Coast Transportation Co.*, 164 Wash. 123, 2 Pac. (2d) 672, 76 A. L. R. 1114; 1 Jones, Evidence (4th. ed.) 630, sec. 344; *Wert v. Equitable Life Assurance Society*, 135 Neb. 654, 283 N. W. 506.

The ruling of the trial court in the case at bar, in admitting as part of the *res gestæ* the declaration giving the opinion of the driver of the transport, was prejudicial error.

The errors which we have now considered require that the

judgment be reversed and this cause remanded for a new trial.

Having reached this conclusion, we will now consider the defendant's argument that there is no negligence proved which warrants the submission of this case a second time to a jury.

The evidence shows that the bridge was damaged, that there was a tire mark on the batter chord on the north side of the bridge, and two eight-foot sections of channel irons, or rails, were dislodged, and one was stuck in the ground. A tire may have blown out, as all except one of the tires were down after the fire.

The evidence also shows that, about 12 feet west of this bridge, there were two four-foot furrows in the side of the road, running towards where the fruit truck was found.

The facts of exactly the location of each truck after the fire do not tend in any way to show or prove exactly how this terrible accident, which caused the death of five men, came about.

We fail to find any substantial affirmative proof that the negligence of the driver of the gasoline transport caused this accident. There is no evidence that he was driving at an unlawful rate of speed, or that the truck was not properly lighted, or that he steered or drove the truck negligently, for striking the side of the bridge may have been caused by a tire blowing out. There were no eyewitnesses who testified in court as to a collision, if one occurred, or whether the fruit truck was standing or in motion, or at what moment the gasoline started to burn, or why.

The real problem presented, as to which one of several inferred causes may actually have caused the gasoline transport to tip over, cannot be solved by the evidence in the bill of exceptions.

Negligence can never be inferred from the mere fact that an accident happened.

The statements made by these witnesses, all of whom came after both trucks had been blazing fiercely, are insufficient to prove what happened, or to prove any neg-

ligence on the part of the driver of the transport, to say nothing of negligence of that degree which warrants a recovery in this case. *Anderson v. Interstate Transit Lines*, 129 Neb. 612, 262 N. W. 445; *Leonard v. Trimble*, 133 Neb. 254, 274 N. W. 593; *Mischnick v. Iowa-Nebraska Light & Power Co.*, 125 Neb. 598, 251 N. W. 258; *Bernhardt v. Chicago, B. & Q. R. Co.*, 132 Neb. 346, 272 N. W. 209; *Klein v. Beeten*, 169 Wis. 385, 172 N. W. 736; *Miner v. Scholton*, 250 Mich. 645, 231 N. W. 120; *Loucks v. Fox*, 261 Mich. 338, 246 N. W. 141.

The burden rested upon the plaintiff to establish by a preponderance of the evidence that the driver of the transport was guilty of negligence, which negligence was the proximate cause of the death of Delbert L. Bowers.

The circumstances, as shown by the evidence, lead to no more than a conjecture or surmise that such was the case. Therefore, it is our opinion that the evidence does not warrant a recovery, and the judgment is therefore reversed and the action dismissed.

REVERSED AND DISMISSED.

MESSMORE, J., dissenting.

I respectfully dissent from the majority opinion, in that I am convinced that the physical facts and surrounding circumstances do not warrant a dismissal of this case.

The bridge in question was durable, made mostly of steel and concrete. The batter chord on the northeast corner was approximately 10 inches in width, coming up to a 45-degree angle and reinforced underneath with latticework for support. After the accident 14 to 16 inches of the guard-rail on the northeast corner of the bridge was broken off, as was a two-by-six-inch plank. The wheel guard on the north side was torn up to about two-thirds of the way across the bridge. There were tracks on the bridge floor, clearly indicating that something had dragged from at least half to two-thirds of the way across. Strips of iron were rolled into small parcels. The batter chord was broken, sprung and pushed down. Tire marks appeared up to the top of the batter chord. The position of

the oil transport immediately after the accident was directly west of the bridge in the proximate center of the highway, and was bottom-up, the cab part in a jack-knife shape.

The physical facts are important and disclose that the transport must have been driven at a high rate of speed, because when it struck the northeast corner of the bridge and batter chord it tore the bridge floor loose from the pier to which the end of the floor was attached, and, likewise, the steel braces under the batter chord. The transport turned in a southwesterly direction and must have struck the fruit truck, parked on the shoulder of the road with sufficient force to throw such truck into a ditch south of the south shoulder of the road, the transport proceeding for a distance of 40 feet west of the west end of the bridge.

The channel cord was torn from the northeast corner and thrown to the southwest corner, and was found sticking in the ground at such point. This clearly indicates that the fruit truck was not on the bridge when the accident occurred. Had it been, it would have had to pass over the channel cord sticking in the ground; in addition, the guard-rail would have been damaged, and a part of the dirt bank destroyed.

My contention is that the physical facts and circumstances surrounding the accident are amply sufficient to warrant the submission of negligence on the part of the driver of the transport to the jury, and such negligence might and could constitute the proximate cause of the damages, as pleaded in plaintiff's petition. In consideration of the record, as I understand it, I cannot countenance a dismissal of this case.