GLEN GILLILAND, AS ADMINISTRATOR OF THE ESTATE OF MARIAN ELAINE GILLILAND, DECEASED, APPELLEE, V. FRED WOOD, APPELLANT, IMPLEADED WITH LLOYD L. BICKEL, APPELLEE.

63 N. W. 2d 147

Filed March 5, 1954. No. 33495.

*Chambers, Holland & Groth* and *Dryden, Jensen & Dier,* for appellant.

*Blackledge & Sidner,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is an action to recover damages for wrongful death resulting from an automobile accident. It was commenced by the administrator of the estate of Marian Gilliland against Fred Wood and Lloyd L. Bickel. The jury returned a verdict against the defendant Wood in the amount of $3,250 and judgment was entered thereon.

The evidence shows that Wood was driving an automobile owned by Bickel at the time of the accident. The trial court directed a verdict for Bickel at the close of all the evidence. No cross-appeal was taken from this ruling. The verdict was against Wood alone, and Bickel is no longer a party to the action.

The evidence shows that on March 24, 1952, Marvin A. Keith was driving east from Kearney towards Shelton, Nebraska, at about 7:20 p. m. He was accompanied by Lorraine Smith, who is now his wife, and the deceased, Marian Gilliland. All were riding in the front seat with Marian sitting on the right side and Lorraine sitting in the middle. Marian was killed in the accident and the Keiths, who suffered very severe injuries, are unable to recall anything that happened immediately preceding the collision. They did testify that they remember passing a certain cafe as they left Kearney, and that they were then driving east on the south side of the center line of the highway. From that time on they have no recollection of what occurred.

The defendant Wood testified that he was employed by Lloyd L. Bickel to feed and care for a herd of cattle

on the Kearney Air Base, approximately 5 miles east of Kearney. After completing his work for the day, Bickel permitted him to use his automobile to return to his home in Kearney. He testified that he drove to the south entrance of the air base and turned west on U. S. Highway No. 30. At a point about one-half mile west of the entrance he said he saw a car about 30 feet northwest of him which appeared to come out of the borrow pit on the north side of the road. He testified that the car was traveling about 10 miles per hour and that he had no opportunity to avoid the collision. All of the persons involved in the accident were unconscious when Don Slaughter, a farmer living close by, arrived on the scene.

Don Slaughter was the first to arrive at the place of the accident. He was standing in his farmyard about 100 feet north of the highway and 200 feet west of the point of the collision when it occurred. He testified that he got into his car and arrived at the wreck within a minute or two after it happened. He stated that no cars passed by prior to his arrival. The car driven by Wood was on the north side of the road on the shoulder, headed east, with the right front wheel barely on the pavement. The Keith car was headed northeast with its front wheels in the center of the south half of the highway. The Keith car was about 25 feet east of the Wood car. Defendant Wood was on the south shoulder with his head to the east about 25 feet west of the Keith car. The three people who were riding in the Keith car were east of it on the shoulder of the highway. There was a lot of debris such as dirt, chrome, and glass on the highway. Most of it was in the center and south portion of the road. The highway was clear of snow and ice but the fields and borrow pits were full of snow. There were no car tracks in the borrow pits on either side of the highway. No traffic passed the scene of the accident until the sheriff and the Kearney fire de-

partment emergency unit arrived. These facts were verified by the sheriff and other witnesses.

Sheriff Lloyd L. Frank testified that the Wood car had chains on the rear wheels. There were no chains on the Keith car. He testified to finding chain marks on the north side of the center line of the highway about 32 feet east of the front end of the Wood car. The east chain mark was about 6 inches from the center line and the west chain mark was from 18 inches to 2 feet north of the center line, the inference being that the front of the Wood car was necessarily south of the center line when the chain marks were made.

Photographs of the automobiles were placed in evidence. The right front and side of the Wood car were badly damaged. The bumper of the Keith car was wedged into the damaged portion of the Wood car at and above its damaged right front wheel. The Keith car appears from its picture to have been hit almost head-on. The damage to the right front side of the Wood car supports the inference drawn from the chain marks that it had crossed to its left across the center line and had been struck on its right side.

There is evidence in the record that there was a strong odor of intoxicating liquor on Wood's breath when he was picked up. Three members of the emergency unit crew testify to this fact. Wood denied that he had a drink that day. There was a cafe known as the Mystery Cafe, on the route taken by Wood, where intoxicating liquors were sold. There was a discrepancy of more than an hour in the time Wood said he started home and the time of the accident, which was not accounted for.

Sheriff Frank testified in rebuttal that he talked with Wood about 11:30 p. m. on the night of the accident and that he then said that he could not remember anything about it. He talked with Wood again in a Lincoln hospital on April 10, 1952, and he then said he remembered stopping at the Mystery Oil Station on the way home,

but he did not remember seeing any car at any time immediately prior to the collision.

The physical facts demonstrate that the Keith car did not come onto the highway from the north. Several witnesses testified that there were no car tracks in the north borrow pit. We think the facts here recited furnish a basis for a conclusion by a jury that Wood crossed over the center line and that his car was struck on the right front by the Keith car. The evidence was sufficient to support a verdict. Gutoski v. Herman, 147 Neb. 1001, 25 N. W. 2d 902.

Negligence is ordinarily a question of fact which may be proved by circumstantial evidence and established physical facts. If such facts and circumstances, and the inferences that may be drawn therefrom, indicate with reasonable certainty the existence of the negligent act complained of, it is sufficient to sustain a verdict by the jury. Simcho v. Omaha & C. B. St. Ry. Co., 150 Neb. 634, 35 N. W. 2d 501; Rocha v. Payne, 108 Neb. 246, 187 N. W. 804. Undisputed physical facts, which demonstrate the negligence or nonnegligence of a party, alone are sufficient to sustain a verdict of a jury. Hessler v. Bellamy, 128 Neb. 571, 259 N. W. 514.

Defendant complains of an instruction containing references to the law governing the speed of automobiles on the public highways. The petition contained no allegation of excessive speed on the part of the defendant. We think it was error for the court to have so instructed the jury. An examination of the evidence reveals that the case was tried on the theory that defendant crossed the center line into the path of the Keith car and that Wood was intoxicated at the time of the accident. No evidence of excessive speed apears in the record and we fail to see how a jury could have been mislead by quoting the speed provisions in connection with other proper statements in the statute governing the rules of the road. The part of the instruction complained of should not have been given, but it clearly was not prejudicial to the

rights of the defendant under the circumstances here shown. Rocha v. Payne, *supra*.

Defendant complains that the evidence was insufficient to warrant the submission of the question of defendant's intoxication to the jury. There is evidence by three witnesses that there was a strong odor of intoxicating liquor on defendant's breath immediately following the accident. The instruction as given stated: "With reference to the allegation of plaintiff's petition that the defendant, Fred Wood, was under the influence of intoxicating liquor at the time of the accident in question, you are instructed that if you find from a preponderance of the evidence that said allegation is true, that, in and of itself, and standing alone, would not be proof of negligence; and before you would be justified in finding against the defendant because of intoxication you must further find by a preponderance of the evidence, from all the facts and circumstances shown by the evidence, that his condition of intoxication manifested itself in physical acts of omissions in the operation of his automobile which would constitute negligence, and that said physical acts or omissions in the operation of his automobile, caused by such alleged intoxication, were negligent, and were proximate causes of the injury to and death of Marian Elaine Gilliland."

We think the instruction was properly given. It was made clear that the evidence of intoxication standing alone was insufficient upon which to find a verdict for the defendant. The jury was told that this evidence, when taken in connection with other manifestations of acts or omissions constituting negligence, was proper to be considered in determining whether the defendant was negligent. This, we think, correctly states the rule applicable to a situation of this kind. They could properly be considered in connection with the testimony of the defendant that he did not see the Keith car until he was within 30 feet of it, that it appeared to come up out of the borrow pit when the physical facts show that

it did not do so, and in connection with the chain marks and debris on the pavement indicating that defendant's car did cross the center line of the highway into the path of the oncoming Keith car. There was no error in giving the instruction under the circumstances shown. Hackbart v. Rohrig, 136 Neb. 825, 287 N. W. 665.

Other objections to the instructions are assigned as error. An examination of the instructions as a whole convinces us that they contain no prejudicial error. No contention is made that the court erred in instructing the jury on the question of damages, or that the verdict returned is excessive. The case appears to have been tried with due regard to the rights of the defendant.

We find the judgment to be free from prejudicial error, and it is affirmed.

AFFIRMED.