GEORGE F. HOWELL, APPELLANT, V. ROBINSON IRON AND METAL CO., A PARTNERSHIP, APPELLEE.

113 N. W. 2d 584

Filed March 9, 1962. No. 35014.

*Cassem, Tierney, Adams & Henatsch* and *Morris J. Bruckner*, for appellant.

*Kennedy, Holland, DeLacy & Svoboda* and *Robert A. Skochdopole*, for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This is an action by George F. Howell, plaintiff and appellant, to recover damages from Robinson Iron and

Metal Co., a partnership, defendant and appellee, predicated on alleged negligence of the defendant through its agents and employees, which caused a fire which damaged and destroyed property, for the loss of which the plaintiff was entitled to recover from the defendant. The amount of the claimed damage was $7,925.

After issue was joined the case was tried to a jury. At the close of the evidence for the plaintiff the defendant made a motion in the alternative for a directed verdict or for dismissal of the action. This motion was sustained and the action was dismissed. A motion for new trial was filed by the plaintiff which was overruled. From the order overruling the motion for new trial and the judgment dismissing the action the plaintiff has appealed.

To the extent necessary to state here, it was alleged by the petition on which the case was tried that the plaintiff was the owner of a building situated at 3877 Leavenworth Street in Omaha, Nebraska; that in the building was an abandoned ice plant containing a lot of scrap iron; that about May 2, 1957, the plaintiff sold the scrap iron to the defendant which scrap iron, under agreement, was to be removed by the defendant; that for the purpose of removal the south end of the building in which the equipment was located was placed under exclusive control of the defendant; and that the employees of the defendant, for the purpose of removing the equipment, used cutting torches which were so negligently used as to set fire to and destroy the south end of the building.

The acts of negligence charged were 10 in number. In substance they were as follows: (1) In allowing sparks to settle in the wooden framework of the building; (2) in applying direct heat from an acetylene torch to wooden framework and combustible material; (3) in allowing sparks off metal to come into contact with wooden framework and combustible material; (4) in failing to use experienced personnel; (5) in failing to determine whether any sparks were still smoldering before the

employees left the premises; (6) in failing to use baffle plates to protect against direct heat coming from the acetylene torch; (7) in cutting over a wooden floor without having first swept the floor; (8) in failing to wet down the floor and combustible material on it before cutting over them; (9) in failing to keep a proper lookout for unarrested sparks; and (10) in failing to have adequate fire extinguishing equipment.

The effect of the judgment of the district court was to say that the plaintiff failed to adduce evidence sufficient upon which to submit to the jury the question of whether or not defendant in any of the respects charged was guilty of negligence which was the proximate cause of the fire and its consequences.

The record shows that there was a fire in the building described in the petition and that the part of it involved in the action was for all intents and purposes destroyed but not altogether consumed. The front of the building faced to the north on Leavenworth Street and was not of wooden construction. Attached on the south was a wooden structure built on two levels. The dimensions were about 45 by 60 feet. The floor was cement but almost in its entirety the rest was wood. Prior to 1943 this portion of the building was used as an ice-manufacturing plant. Thereafter it was used only for the storage of furniture. The ice-making equipment was, on May 2, 1957, sold to the defendant under an agreement for removal by the defendant. It was contemplated that the equipment, being metal, would require cutting by the use of acetylene torches for removal. Outside, at the southwest corner and immediately adjacent to the south wall, was a pit filled with rubbish which was there at the time the sale was made. There was a garage attached to the east side of the building, the south end of which was near the south end of the building. There were doors and windows in the building but their sizes and locations are not clearly stated. A large part of the interior of the building was covered with cardboard.

The facilities and equipment, except the metallic equipment used for ice making, were what may be regarded as inflammable. Prior to the start of removal of equipment, all furniture had been removed and the defendant had removed all rubbish, debris, and loose material in the building. There had however been no sweeping to remove an accumulation of dirt and dust. The work in removal was started possibly on May 7, 1957, and was carried on practically continuously from about 8 a.m., on May 8th. It was in the direct charge of one Frank Sillik. He had two helpers. The evidence indicates that for a large part of the day Sillik was engaged in cutting the metal with an acetylene torch. What the other two did is not disclosed except that while Sillik was operating the torch one of them was watching to see that no fires were started by sparks from the torch. These employees stopped work about 5 p.m. and left the premises about 10 minutes later. The fire was reported about 7:50 p.m. There is no direct evidence as to what caused the fire and none whatever as to the specific location of its beginning. One witness stated generally that it started in the south and west side and another that it started in the south and west corner.

There is no direct evidence to support seven of the alleged acts of negligence of the defendant. There is direct evidence in support of three, that is, that inexperienced personnel were used; that there was a failure to have adequate fire extinguishing equipment; and that no baffle plates were used; but, as is clear, no right of action may be based upon them unless this neglect alone or in connection with another act or acts amounted to proximate cause.

The burden of proof, and this nobody questions, was on the plaintiff to adduce evidence from which a jury could properly proceed to find in favor of the plaintiff. See, Fick v. Herman, 159 Neb. 758, 68 N. W. 2d 622; Christ v. Nelson, 167 Neb. 799, 95 N. W. 2d 128.

This burden may not rest on presumption. "Negli-

gence is never presumed, and cannot be inferred from the mere fact that an accident happened." Bixby v. Ayers, 139 Neb. 652, 298 N. W. 533. See, also, Halsey v. Merchants Motor Freight, Inc., 160 Neb. 732, 71 N. W. 2d 311.

In this case, in the light of the record, it must be said that this burden of proof has not been sustained unless it has been sustained by circumstantial evidence. This the plaintiff concedes in his brief in the following statement: "We call the court's attention to this proposition because the appellant had to rely on circumstantial evidence to prove the negligent cause of the fire."

The burden of establishing a cause of action by circumstantial evidence requires that such evidence, to be sufficient to sustain a verdict or require submission of a case to a jury, shall be of such character and the circumstances so related to each other that a conclusion fairly and reasonably arises that the cause of action has been proved. See, Bixby v. Ayers, *supra;* In re Estate of Bingaman, 155 Neb. 24, 50 N. W. 2d 523; Halsey v. Merchants Motor Freight, Inc., *supra.*

In order to sustain his burden under the foregoing rule a plaintiff is not bound to exclude the possibility that the accident might have happened in some other way. Fonda v. Northwestern Public Service Co., 138 Neb. 262, 292 N. W. 712; Taylor v. J. M. McDonald Co., 156 Neb. 437, 56 N. W. 2d 610.

From the various pronouncements on this subject it appears that two guiding rules have emanated. One is as follows: "Negligence is a question of fact and may be proved by circumstantial evidence and physical facts. All that the law requires is that the facts and circumstances proved, together with the inferences that may be properly drawn therefrom, shall indicate with reasonable certainty the negligent act charged." Gilliland v. Wood, 158 Neb. 286, 63 N. W. 2d 147. See, also, Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701.

The other, which is found in Bedford v. Herman, 158

Neb. 400, 63 N. W. 2d 772, is the following: "In order for circumstantial evidence to be sufficient to require the submission of an issue of negligence to a jury it must be such that a reasonable inference of negligence arises from the circumstances established. If such evidence is susceptible to any other reasonable inference, inconsistent with the inference of negligence on the part of the party charged, it is insufficient to carry the case to the jury."

In this case it does not become necessary to consider affirmative evidence, either direct or circumstantial, that the fire was caused by acts of other than the defendant and its employees. No such evidence was presented. This leaves only the question of whether or not the evidence of facts and circumstances with their inferences was sufficient to require a jury to determine whether or not the defendant was guilty of negligence in one or more of the particulars charged which was the proximate cause of the fire.

It may well be said that there is no direct evidence in the record from which alone an inference of negligence could flow. If however there was circumstantial evidence which, coupled with the direct evidence of one or more of the acts charged, could be reasonably said to be proof of negligence, it must be said that the evidence was sufficient for submission of the issue to a jury.

The cutting was done with an acetylene torch and usually the heat generated for this purpose was from 5,000 to 7,000 degrees. Heat of 3,000 degrees however was regarded as sufficient with which to perform the operations involved. Sparks from such an operation could fly from 30 to 40 feet. In this instance, on one occasion, sparks were seen to fly about 9 feet. Baffle plates could be used to arrest sparks flying from the torch but none was used. The cutting was not localized but appears to have been carried on quite generally over the interior of the building. It was done over an unswept floor on which there was an accumulation of

dust which under the evidence could be regarded as combustible. There is no evidence that the floors and the combustible materials were wet down. There is no evidence that any effort was or was not made when work ceased to ascertain whether or not there were any live or unarrested sparks in the building.

A fair reflection of the evidence is that when the workmen left, the doors of the building were probably closed but there was at least one opening which was not barricaded. When the fire was discovered it was apparently so far advanced that it was impossible to ascertain the exact point of origin. No witness testified in point of fact as to the cause of the fire, and the trial court did not permit, on the basis of lack of foundation, any witness to give in evidence an opinion as to the cause.

There was no evidence that any persons other than the employees of the defendant had been on the premises. There was no evidence that there was any surrounding incident or condition which could have started the fire. Of course, in speculation, incendiarism or carelessness of a trespasser could have been the cause. There was no evidence however to reasonably support such an event.

On the other hand, from the activities and incidents which have been described, it is clear that this fire could have been caused by the negligence of the employees of the defendant. Logic inevitably points in that direction. This logic however is not controlling.

The true rule as applied to this case, as is made clear by the cases cited herein, is that if different minds may draw different conclusions or inferences from the adduced evidence as to whether or not it has been shown with reasonable certainty that the fire was caused by the negligent acts charged, the matter at issue must be submitted to a jury.

The conclusion reached is that on the basis of this rule and the evidence an issue was presented which

should have been submitted to a jury for determination.

The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.