HOWARD E. WOLSTENHOLM, EXECUTOR OF THE ESTATE OF ALICE H. WOLSTENHOLM, DECEASED, APPELLEE AND CROSS-APPELLANT, V. JANET A. KALIFF ET AL., APPELLANTS AND CROSS-APPELLEES.

126 N. W. 2d 178

Filed February 7, 1964. No. 35509.

Wallace W. Angle and Herman Ginsburg, for appellants.

John R. Brogan and John E. Dougherty, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, SPENCER, BOSLAUGH, and BROWER, JJ., and LYNCH, District Judge.

SPENCER, J.

This is an action by Howard E. Wolstenholm as executor of the estate of Alice H. Wolstenholm, deceased, hereinafter referred to as appellee, to recover for the alleged wrongful death of his wife in the collision of an automobile being operated by her and the automobile owned by the defendants Janet A. Kaliff and Charles L. Kaliff, and being operated by Janet A. Kaliff. The Kaliffs are husband and wife. They will hereinafter be referred to collectively as appellants, or individually by their respective names.

The appellee sought recovery in three causes of action: First, for the wrongful death; second, for funeral expenses; and third, for hospital and medical expenses. The jury returned a verdict for the appellee on each of the three causes of action as follows: First cause of action, $6,970.67; second cause of action, $1,180.50; and third cause of action, $195. The appellee filed a motion for a new trial which was sustained. Appellants have perfected an appeal to this court. Appellee has also perfected a cross-appeal seeking to limit a new trial of the case to the amount of the damages.

The district court gave no reason for its decision sustaining the motion for new trial. In such situation, we have held that the appellant meets the duty placed upon him when he brings the record here for examination with his assignment of no prejudicial error. The duty then rests upon the appellee to point out the prejudicial

error that he contends exists to justify the action of the trial court. See Biggs v. Gottsch, 173 Neb. 15, 112 N. W. 2d 396. In that case we held: "On review in this court of an order granting a new trial, there is no burden in the sense of a burden of proof upon either party. The burden is upon both parties to assist the court to a correct determination of the question or questions presented."

To meet the burden imposed upon him, appellee alleges 20 assignments of error which for the purpose of our discussion herein, we condense to three: First, did the court err in submitting the issue of contributory negligence to the jury; second, did the court err in not finding the defendant Janet A. Kaliff guilty of negligence as a matter of law; and third, did the court err in not holding that the only issue to be submitted to the jury was the question of the amount of damages?

. The collision occurred about 12:25 p. m., on the 25th day of February 1961, at a county road intersection in York County, known as the Maple Grove schoolhouse corner, which is approximately 3 miles south and east of the city of York, Nebraska.

Alice H. Wolstenholm, hereinafter referred to as the deceased, was driving a 1959 DeSoto automobile, hereinafter referred to as DeSoto, from the west and traveling to the east. Janet A. Kaliff was driving a 1961 Ford, hereinafter referred to as Ford, from the north and traveling to the south. A "Yield Right of Way" sign had been erected by the county on the north-south road, approximately in line with the fence running east and west. This sign was 36 feet 8 inches from the center of the intersection. The roads in question were gravel surfaced and were each 29 feet from shoulder line to shoulder line, but each had a graveled windrow, leaving a traveled surface of only 18 feet. The overall width of the intersection from fence line to fence line was 65 feet. The weather at the time in question was clear. The roads were dry and the sun was shining. It is un-

disputed that the view of the intersection from the direction each vehicle was traveling was unobstructed for at least a quarter of a mile.

Janet A. Kaliff testified that her vision was good and that as she approached the intersection there was nothing to distract her attention. She testified that she stopped back of the "Yield Right of Way" sign and looked both ways. She saw nothing and proceeded into the intersection at 5 miles per hour, which was her speed at the time of the impact. She looked to the east and to the west after she pulled into the intersection and saw nothing. She traveled south in a direct line to the point of impact. She does not know if she ever applied her brakes. She has a question about it because the leather was torn down on the instep of her slipper about an inch, and she believes this might have been caused by applying her brakes at the last instant. She testified that she was actually in the impact of the two automobiles before she saw the other vehicle.

There were no eyewitnesses to the impact. Three witnesses testified to seeing a cloud of dust 10 to 15 feet high, but none of them saw the impact or the movement of the cars. Two of these witnesses were driving south on the north-south road approximately ½ mile from the intersection. The other witness was proceeding west on the east-west road, but his distance from the intersection is not disclosed by the record.

When the cars came to rest, the Ford was in the east ditch of the north and south road, facing south, the same direction in which the car was being driven. The DeSoto was on the east and west road on its top in the south road ditch facing west, the direction from which it had been traveling. The front seat of the DeSoto, which had been bolted down with steel bolts, was out of and in front of the vehicle. The deceased was lying 20 feet east and in front of her vehicle.

There were scrape marks in the intersection, starting 2 feet south and 1 foot west of the geographical center

of the intersection. It was possible to identify these marks with the two cars, and they went side-by-side to the southeast corner. The start of the marks was 33 feet 6 inches from the back of the Ford where it came to rest, and 62 feet from the back of the DeSoto. There was blue paint on the fence post at the apex of the southeast corner, which indicates it made contact with the DeSoto. Exhibit No. 15 shows what appears to be the imprint of a fence post across the trunk of the DeSoto. This post is 46 feet 8 inches from the start of the marks in the intersection.

The force of the impact to the DeSoto was in the center of the car. The left side of the DeSoto was caved in from about the front door post on back to the back door. The steering wheel was pushed against the dash. The front seat, as mentioned, was thrown from the car. The frame of the car was bent toward the direction in which the Ford was traveling. There was no damage to the immediate front of the DeSoto. The damage to the Ford was to the direct front and both front fenders. The exhibits in evidence indicate that this damage was extensive, although there is no detailed description of the specific damage.

In the absence of other evidence, we assume the point of impact to be the point where the slide marks start in the intersection. This is 2 feet south and 1 foot west of the geographical center of the intersection. The photographs in evidence show that the left side of the DeSoto was struck by the front of the Ford at approximately the front door. There is no evidence in this record as to the speed of the DeSoto or as to its position at any time previous to the actual impact.

There is not a scintilla of evidence in this record that would support a submission of the issue of contributory negligence. There was no witness to the actual collision. The evidence herein is undisputed. Janet A. Kaliff did not see the vehicle being driven by the deceased. No evidence was adduced which would impose any duty on

the deceased to raise a question as to the right to proceed. The vehicle of the deceased did have the directional right-of-way, and, in the absence of evidence to the contrary, deceased was presumed to be exercising due regard for her own safety and the safety of others. See, Anderson v. Nincehelser, 152 Neb. 857, 43 N. W. 2d 182; Bailey v. Spindler, 161 Neb. 563, 74 N. W. 2d 344; Bell v. Crook, 168 Neb. 685, 97 N. W. 2d 352, 74 A. L. R. 2d 223. Deceased also had the right to assume that the driver of any other vehicle approaching the intersection in an unfavored position would take the steps necessary to permit her to clear the intersection.

To sustain appellants' contention that the deceased was guilty of contributory negligence, we must assume contributory negligence merely because a collision occurred. This we cannot do. Negligence is never presumed, and it cannot be inferred from the mere fact that an accident happened. Howell v. Robinson Iron & Metal Co., 173 Neb. 445, 113 N. W. 2d 584. Negligence must be proved by direct evidence, or by facts from which negligence can reasonably be inferred. In the absence of such proof, negligence will not be presumed. Price v. King, 161 Neb. 123, 72 N. W. 2d 603. There clearly is nothing in the position of the cars after the impact from which a sufficient inference could be drawn, in the absence of other evidence, to submit the issue of contributory negligence to the jury. We are met with two guiding rules which dictate this conclusion. The first is that negligence is a question of fact and may be proved by circumstantial evidence and physical facts. However, the law requires that the facts and circumstances proved, together with the inferences that may properly be drawn therefrom, indicate with reasonable certainty the negligent act charged. See Gilliland v. Wood, 158 Neb. 286, 63 N. W. 2d 147.

The second rule is that circumstantial evidence sufficient to submit an issue of negligence to a jury must be such that a reasonable inference arises showing that the

person charged was negligent and that such inference is the only one that reasonably can be drawn therefrom. Bedford v. Herman, 158 Neb. 400, 63 N. W. 2d 772. The physical facts and the inferences appellants would have us draw cannot meet either test.

Appellee made a motion at the close of evidence for a directed verdict on the issue of liability. This was overruled. Appellee also tendered an instruction to the effect that the appellants were guilty of negligence as a matter of law, and that the sole issue for the jury was the amounts to be awarded on the three causes of action. This instruction was refused.

Was Janet A. Kaliff guilty of negligence as a matter of law? We believe she was. The evidence is conclusive that the intersection was wide open, and that Janet A. Kaliff had an unobstructed view for a distance of a quarter of a mile. She testified that she looked but failed to see the car of the deceased, which had to be in plain sight. In Ring v. Duey, 162 Neb. 423, 76 N. W. 2d 433, we said: "When one looks and does not see what is in plain sight he is in the same situation as one who does not look."

Can one avoid the consequences of failure to yield right-of-way by merely stating he looked but failed to see a car which must have been there? Not unless some explanation for not seeing appears. In Nichols v. McArdle, 170 Neb. 382, 102 N. W. 2d 848, we stated the applicable rules as follows: "In Cappel v. Riener, 167 Neb. 375, 93 N. W. 2d 36, this court said: 'The driver of an automobile entering an intersection of two streets (or highways) is obligated to look for approaching automobiles and to see any vehicle within that radius which denotes the limit of danger. * * * If the driver of an automobile entering an intersection looks for approaching vehicles but fails to see one which is favored over him under the rules of the road, he is guilty of negligence as a matter of law. * * * The operator of an automobile approaching or entering an intersection is required to

see another automobile approaching or entering the intersection which has been favored with the right-of-way under the statutory rules of the road and a failure to see such favored automobile is negligence as a matter of law.' "

In considering the speed of the appellants' automobile as testified by Janet A. Kaliff, and assuming the speed of deceased's automobile to be 50 miles an hour or less, as we are required to do under the situation existing in this case, it is clear that deceased's automobile was in the area of danger and was either seen or should have been seen by appellant Janet A. Kaliff before she entered the intersection. Appellee's tendered instruction to the effect that appellants were guilty of negligence as a matter of law reflected a correct appraisal of the record herein.

There being no evidence in this record sufficient to rebut the presumption of due care on the part of the deceased, and Janet A. Kaliff being guilty of negligence as a matter of law, appellee's motion for a directed verdict on the issue of liability should have been sustained. It is readily apparent from the amount of the verdict on the first cause of action that the jury must have applied the instructions of contributory and comparative negligence as given by the court, and the motion for new trial was therefore properly sustained.

It is apparent also from what we have said that appellee's cross-appeal must be sustained. The only issue upon the retrial of this case is the amount of the recovery.

The judgment of the trial court in sustaining the motion for new trial is affirmed. The trial court is directed to ascertain the amount of the appellee's damage by a retrial of that issue only.

AFFIRMED AS MODIFIED.

WHITE, C. J., concurring.

I concur in the above opinion as to the result reached and the analysis of the evidence supporting the holding. I do not agree with the statement in the opinion or the

syllabus relating to the applicable rule as to the sufficiency of circumstantial evidence to make a jury case.

The syllabus and opinion state that before a jury may consider an issue of negligence based on circumstantial evidence, not only the evidence must be such that a reasonable inference may be drawn showing negligence, but that "such inference is the *only* one that reasonably can be drawn therefrom." (Emphasis supplied.)

The rule stated and followed in this opinion comes originally from the pronouncement in Blid v. Chicago & N. W. Ry. Co., 89 Neb. 689, 131 N. W. 1027, wherein it was stated that circumstantial evidence, sufficient for jury determination, must be such that "the conclusion reached is the *only one* that can be fairly and reasonably drawn therefrom." (Emphasis supplied.) I submit that the above rule and holding in the Blid case were overruled and rejected in Davis v. Dennert, 162 Neb. 65, 75 N. W. 2d 112. The court held that the rule followed in civil cases should be that stated in Rocha v. Payne, 108 Neb. 246, 187 N. W. 804; Markussen v. Mengedoht, 132 Neb. 472, 272 N. W. 241; Taylor v. J. M. McDonald Co., 156 Neb. 437, 56 N. W. 2d 610; Shields v. County of Buffalo, 161 Neb. 34, 71 N. W. 2d 701; and Griess v. Borchers, 161 Neb. 217, 72 N. W. 2d 820.

There was a diversity of opinion on this point in the cases before Davis v. Dennert, *supra*, as that opinion points out. And, admittedly, there has been some deviation since Davis v. Dennert, *supra*.

It is not the purpose of this concurrence to go into a full discussion of the conflict of the cases in this respect and the considerations that bear on the merits of it. See, 32 C. J. S., Evidence, § 1039, pp. 1102, 1103; 20 Am. Jur., Evidence, § 1189, p. 1043, notes 12 to 15, and also a fine annotation in 97 Am. S. R. 821 (1904).

The error of the stated rule is that it excludes from jury consideration every other rational inference that can reasonably be drawn from purely circumstantial evidence. It does not permit choice by the jury. We

have said many times that reasonable men may differ as to the reasonable inferences to be drawn from evidence, circumstantial or direct. I submit that after a determination on the part of the court that different reasonable inferences may be drawn from the evidence, it is then for the jury to determine, as weigher of the facts, by a preponderance of the evidence, which of the reasonable inferences is chosen. In a criminal case, this choice by the jury must be beyond a reasonable doubt and must exclude all other rational inferences or hypotheses.

If we apply the rule literally as stated in the majority opinion, what is there left for jury determination in a case where all of the evidence is undisputed and circumstantial? Is jury function eroded to mere credibility determination? We have said many times that where the facts adduced to sustain an issue, either by circumstantial or direct evidence, are such that reasonable minds *can draw but one* conclusion therefrom, it is the duty of the court to decide the question, as a matter of law, rather than submit it to a jury for determination.