KENTON B. BOWERS, APPELLANT, v. GRACE B. MAIRE, ADMINISTRATRIX OF THE ESTATE OF HERMAN C. MAIRE, DECEASED, APPELLEE.

137 N. W. 2d 796

Filed November 5, 1965. No. 35951.

Stubbs & Metz, for appellant.

McGinley, Lane, Mueller & Shanahan, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

WHITE, C. J.

This is a suit for personal injuries and property damage arising as a result of an automobile accident. The district court directed a verdict in favor of the defendant, administratrix of the estate of Herman C. Maire, decedent. The questions involved concern the sufficiency of the evidence to establish negligence of defendant's decedent Maire and, second, the trial court's holding that the plaintiff was barred from testifying as to how the accident occurred under the provisions of section 25-1202, R. R. S. 1943, the dead man's statute.

The accident occurred at about 6:30 p.m., on July 24, 1963, on State Highway No. 2, approximately 11 miles west of Mullen, Nebraska. The highway was oiled, ran in an east-west direction, had a painted centerline, and was approximately 19 feet, 6 inches wide. The road was dry and visibility was good. Plaintiff Bowers was driving west and defendant's decedent Maire was driving east. Maire was killed in the accident. Since plaintiff was barred from testifying as to how the accident happened, the evidence before the court was the location of the vehicles after the accident, and evidence of certain physical facts as developed by the testimony of the highway patrolman, Eldred Folkers, and the deputy sheriff, Francis E. Brown. The evidence shows that there was severe damage to the right front portion of both vehicles, the Maire station wagon and the plaintiff's pick-up truck. The plaintiff's vehicle was off the highway to the south, was next to the fence, and was pointing in a northwesterly direction. The Maire vehicle was partly on the

highway, was north of the centerline, and was headed in a southwesterly direction. It appears that the distance between the vehicles was approximately eighteen feet. There were no skid marks leading up to either vehicle at the scene of the accident. There was debris, including oil and dirt, strewn over the highway, mainly on the north side. The evidence is that there were several gouge marks in the highway close to and on both sides of the centerline. There was a scuff mark on the highway leading from the vicinity of the gouge marks diagonally across the highway to the south in the direction of the plaintiff Bowers' vehicle.

Negligence is never presumed and cannot be inferred from the fact that an accident occurred. Bowers v. Kugler, 140 Neb. 684, 1 N. W. 2d 299; Anderson v. Interstate Transit Lines, 129 Neb. 612, 262 N. W. 445. And, where the evidence is wholly circumstantial, as here, it is insufficient unless the circumstances proved are of such a nature and so related to each other that the conclusion reached is the only one that can be fairly and reasonably drawn therefrom. Flory v. Holtz, 176 Neb. 531, 126 N. W. 2d 686; Wolstenholm v. Kaliff, 176 Neb. 358, 126 N. W. 2d 178; Anderson v. Interstate Transit Lines, *supra*.

Plaintiff is entitled to have all conflicts in the evidence resolved in his favor and is entitled to the benefit of all reasonable inferences to be drawn therefrom. Does the evidence, construed most favorably to the plaintiff, establish that the proximate cause of the accident was the negligence of Maire in driving on the north or wrong side of the road? We think not. The gouge marks were on both sides of and close to the centerline of the highway. Debris was generally over the roadway leading to both cars. No evidence appears from which a reasonable inference can be drawn as to where the point of impact was. The gouge marks cannot be identified as coming from or caused by a particular vehicle. The ones on the north or south could have been caused by either vehicle. Both vehicles were damaged on the

right front but this does not show where the impact occurred, much less indicating that the proximate cause of the accident was the Maire vehicle being driven on the north or wrong side of the road. The inference can be drawn that both drivers turned to the left immediately prior to the accident but this in no way demonstrates that at that time the Maire vehicle was in the north or wrong lane. The position of the vehicles, with the Bowers' vehicle coming to rest considerably south of the road, leads us to no inference of what position it was traveling on the road prior to the accident. As we noted in Anderson v. Interstate Transit Lines, *supra*, the complexity of forces operating on two rapidly moving vehicles in collision with one another makes it extremely difficult to reconstruct how the accident happened from the marks found on the highway and the positions and conditions of the vehicles after the accident. The plaintiff's position is further weakened by the testimony of the patrolman that he could not connect the markings on the highway to the accident itself, although there was testimony that the markings were of recent origin. There is no evidence in the record as to speed of the automobiles or as to lookout since, under the dead man's statute, section 25-1202, R. R. S. 1943, plaintiff was not permitted to testify. In Anderson v. Interstate Transit Lines, *supra*, this court held that the evidence as to negligence of the defendant who collided with an oncoming truck was not sufficient to allow the case to go to the jury. The court said: "Nothing in the evidence tends to reasonably identify the point of collision, with reference to the center boundary of the highway. The actual problem presented by the record in its present form is one of the resolution of forces, and we would be required to determine from the position of the two motor vehicles at the conclusion of the incident, just where they actually collided. With no evidence before us as to the weight, speed, location on the highway, or direction of movement thereon, of either

truck or bus at the moment of impact, obviously this can not be done." In the case before us, there is likewise no evidence to identify the point of collision with reference to the center boundary of the highway. Debris was scattered over the highway generally and the point of collision could not be identified. We cannot determine from the position of the two vehicles at the conclusion of the accident just where they actually collided. There is no testimony in the record as to the speed, lookout, or location on the highway of either vehicle at the moment of the impact. From the evidence presented, we cannot reconstruct how the accident happened.

The burden rested on the plaintiff to establish Maire's negligence. The circumstances lead to no conclusive inference that the accident was caused by Maire's driving on the wrong or north side of the road. A verdict of a jury on the evidence presented in this case would be based on conjecture, surmise, and speculation and could not be permitted to stand. The district court was correct in directing a verdict for the defendant.

Plaintiff, as to his second assignment of error, asks us to reconsider our holding that an automobile accident is a "transaction" within the language of section 25-1202, R. R. S. 1943, the dead man's statute. This question was resolved adversely to plaintiff's contention in Fincham v. Mueller, 166 Neb. 376, 89 N. W. 2d 137, and in the recent case of Bruno v. Kramer, 176 Neb. 597, 126 N. W. 2d 885. These cases hold that an automobile accident is a transaction and that a claimant's testimony is barred insofar as it relates to his own and the decedent's actions immediately before or at the time of the accident. This question has been decided and has become the law of this state. We adhere to this holding. We point out that in Fincham v. Mueller, *supra*, we held that any change in the rule was a legislative matter and that if the rule was too severe, that it was not a matter of judicial opinion, but one for legislative correction. We also point out that the Legislature has not seen fit

to change the rule or carve out an exception with reference to automobile accidents. This court will not indulge in judicial legislation which, by our indictment, we would be engaging in if we changed the rule.

There is no merit in the plaintiff's assignments of error. The judgment of the district court in directing a verdict for the defendant is correct and is affirmed.

AFFIRMED.

McCOWN, J., dissenting.

I respectfully dissent from that portion of the majority opinion which affirms the prior holdings of this court that an automobile accident is a "transaction" within the meaning of section 25-1202, R. R. S. 1943. This question was originally decided by this court in Fincham v. Mueller, 166 Neb. 376, 89 N. W. 2d 137.

That opinion extensively considered the varying judicial interpretations and viewpoints. The court relied heavily upon the fact that many cases holding that an automobile accident is not a "transaction," involved statutes in which the word "personal" qualified the word "transaction." The opinion then distinguished previous statements by this court that the testimony referred to by the statute related to something of a "personal" nature by classifying them as dicta. It seems to us that the meaning of the word "transaction," under any realistic definition, carries the connotation of something not involuntary, or at least not fortuitous nor accidental. The specific language of the statute "* * * *transaction* or conversation had *between* * * *"" ought not to be interpreted as applying to a situation in which the parties were acting independently of each other; nor should the fact that there was an accidental collision *between* their automobiles transform their independent actions into a "transaction" *between* them. (Emphasis ours.) We simply cannot accept the conclusion that the Legislature in using the word "transaction" intended to include a fortuitous, involuntary automobile accident in which the parties were operating independently of each

other. The dissenting opinion in the Fincham v. Mueller case points out the fact that the disqualification of witnesses is not favored, and that the "dead man's" statute should not be extended or expanded by interpretation.

The majority opinion implies that to change the rule of the Fincham case would be judicial legislation. If judicial legislation is to be defined as "any interpretation of a statute," then, of course, the Fincham case itself was judicial legislation. It is quite clear, however, that the rule adopted in the Fincham case was a judicial interpretation adopted by this court, and clearly subject to change by this court if and when convinced that it was erroneous. The majority opinion points out that the Legislature has not seen fit to change the statute since our original interpretation, and implies that because of that fact, what was originally judicial interpretation has now become legislation. While we recognize that affirmative action by the Legislature following a judicial interpretaton constitutes legislation, inaction by the Legislature does not amount to the same thing. There may, of course, be facts and circumstances which may be strongly persuasive as to whether the Legislature approved or disapproved a judicial interpretation by not acting on it. This does not convert judicial interpretation into legislation, nor should it make an erroneous interpretation inviolable.

For the reasons stated, we respectfully dissent.

CARTER and SMITH, JJ., join in this dissent.